JAMES E. BURNS, JR. (STATE BAR NO. 53250)
jburns@orrick.com
ERICH F. LICHTBLAU (STATE BAR NO. 184450)
elichtblau@orrick.com
EUNICE J. LEE (STATE BAR NO. 233467)
ejlee@orrick.com
SARAH C. MARRIOTT (STATE BAR NO. 241301)
smarriott@orrick.com
TARA M. MCMANIGAL (STATE BAR NO. 252076)
tmcmanigal@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     415-773-5700
Facsimile:     415-773-5759

Attorneys for Plaintiff
Carlos Castro

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carlos Castro,<br><br>                    Plaintiff,<br><br>          v.<br><br>Cal Terhune, Director, California Department of Corrections, Bonnie G. Garibay; J. Batchelor; S. C. Wolhwend; A. Scribner; J. Stokes; M. Yarborough; L. Hood; C. Campbell; A. M. Gonzalez; M. Ayala; E. Derusha, c/o Robert L. Ayers, Warden; J. Martinez<br><br>                    Defendants. | Case No. 3:98-CV-04877-WHA<br><br>**DECLARATION OF CARLOS CASTRO**<br><br>Date:   October 8, 2009<br>Time:   8:00 a.m.<br>Place:  Courtroom 9, 19th Floor<br>Judge: William Alsup<br><br>Trial Date: November 2, 2009 |

1    I, Carlos Castro, declare:

2       1.    During the entire time I have been incarcerated since 1982, at every prison in

3  which I have been housed, my mother has been approved to visit me.

4       2.    On November 14, 2008, my mother's visiting rights were revoked. This was

5  around when we started seeking discovery in this case. I was not informed why my mother was

6  removed from my list of approved visitors. My mother is 73 years old.

7       3.    Around the same time, the guards stopped giving me the postage-paid return

8  envelopes sent to me by my attorney (though they always did in the past).

9       4.    On April 27, 2009, my attorney, Magistrate Judge Vadas and the Deputy Attorney

10  General representing Defendants came to Pelican Bay State Prison for a mediation in this case. I

11  was brought from my cell to a holding cell outside the mediation room. When I was brought back

12  to my cell after the mediation, it looked like a tornado had gone through the cell. I learned that the

13  Pelican Bay Institutional Gang Investigators ("IGIs") had searched my cell during the mediation

14  and taken my personal property, *including my legal documents and correspondence with my*

15  *attorney in this case.* Attached hereto as Exhibit A is a true and correct copy of the Pelican Bay

16  State Prison Security Housing Unit Cell Search Receipt provided to me.

17       5.    The IGIs claimed to have found an original drawing in my cell. I did not draw this

18  drawing, and have never seen it before. It was clearly drawn or planted by the IGIs.

19       6.    The IGIs also claimed to have found a razor in my property during the search. I

20  had no razor in my property. As a result, my television was confiscated for one month. Attached

21  hereto as Exhibit B is a true and correct copy of a Security Housing Unit Cell Search Receipt,

22  dated May 28, 2009, showing that my television was confiscated and was in working condition.

23       7.    After thirty days had passed, my television was not returned to me. I was told that

24  it was not in working condition. Inmates are not permitted to retain televisions that are not in

25  working condition.

26       8.    On August 20, 2009, Pelican Bay IGIs prepared a new gang validation package

27  validating me as a prison gang associate. In my 26 years in the CDCR system and sixteen years in

28

1

1   the Pelican Bay Security Housing Unit, I have never heard of the CDCR preparing a new

2   validation package for an inmate who was already validated as a prison gang associate.

3          9.      The August 20, 2009 validation package, a copy of which is attached hereto as

4   Exhibit C, does not include as a source item the June 26, 1991 confidential memorandum used to

5   validate me in 1997. The Pelican Bay IGI told me, in writing, that the June 26, 1991

6   memorandum does not meet current department standards. A copy of this document is attached

7   hereto as Exhibit D.

8          10.     The validation package contains 12 source items.

9          11.     The first source item is the drawing that was planted by the IGIs the day they

10  ransacked my cell during the mediation in this case.

11         12.     The second source item is a confidential memorandum. I do not know the

12  informant. The CDC 1030 disclosure form says only that I was identified as "Huero from Primera

13  Flats," and that I am a Mexican Mafia associate. While I am Huero from Primera Flats, I am not a

14  Mexican Mafia associate. I also note that, when I was validated in 1997, Defendants claimed I

15  was "Huerito," which was false, and relied upon a postcard that I had never seen addressed to

16  "Huerito."

17         13.     The disclosure form does not contain any information that allows me to refute the

18  claim by the informant, beyond declaring that I am not an associate of the Mexican Mafia. While

19  the informant allegedly made this statement in September of 2006 (the exact date is not provided),

20  I was not told about it until now.

21         14.     The third source item is another CDC 1030 form describing a confidential

22  memorandum. This one also identifies me as "Huero." This informant purportedly said that, in

23  April of 2008, I gave him orders to assault staff. I have never given any such orders. Unless this

24  informant was housed in the same "pod" as me in April of 2008, it would have been impossible for

25  me to have done so. In the SHU, my only opportunity for communication is on my way to the

26  exercise "yard" where I can briefly speak to other inmates housed in my pod. The guards can

27  listen to these conversations.

28

2

15.     The fourth source item is a birthday card for an inmate in my pod.  This was not a gang-related communication, and was not intended to evidence any allegiance on my part to the Mexican Mafia.  It was simply a friendly gesture to one of the inmates in my pod.  The IGI alleges that the birthday card was signed by validated EME associates.  In fact, a review of the new validation package would reveal that not everyone who signed the card was a validated EME associate.  Inmate Estrada (No. P-65453 is identified as a non-validated associate; there is no such designation.  Also, what I signed was a piece of paper, not a birthday card.  I am unaware as to whether this piece of paper was subsequently placed in a birthday card.

16.     The fifth source item is a set of drawings allegedly found in my property.  I did not draw these.  These drawings were not in my cell.  I only received a copy of these documents in discovery wherein I learned they contained the " Maolactlomei" symbol, so small that the IGIs had to blow up the copy to make it clear.

17.     The sixth source item is another confidential memorandum.  This one says that I conducted "EME activities" for Larry Caballero.  I do not know Larry Caballero.  Prison records would prove that I have never met him, and, while housed in the SHU, I could not possibly have communicated with him.  If the IGIs told me what "activities" I supposedly conducted, and when I supposedly conducted them, I could better prove that I did not conduct them.

18.     This memorandum is supposedly dated November 15, 2005.  I was never told about it until now.  It would have been easier for me to prove I did not do what the informant says I did if I had been told about it back in 2005.

19.     The seventh source item is another confidential memorandum.  The disclosure form says that I was directed by David Gavaldon to hold a weapon for the Mexican Mafia.  I do not know David Gavaldon and never held a weapon for the Mexican Mafia.  Prison records will show that I have never had an opportunity to meet David Gavaldon.  This incident purportedly occurred on December 19, 2000, though the memorandum is dated March 4, 2004, and I was never told about it until now.  Given that I am housed in the SHU, it would not have been possible for me to hold a weapon for the Mexican Mafia.  Beyond that, it would have been much easier for

3

1   me to prove that I did not do what the informant said I did had I been told about this back in 2000,

2   or even in 2004, when the memorandum was allegedly written.

3        20.     The eighth source item is another confidential information disclosure form. This

4   one claims that I was "communicating" with Anthony Sisneros. I do not know why this

5   information is considered confidential, as the memorandum describing this alleged communication

6   is contained in the non-confidential portion of my prison file. The memorandum says that Mr.

7   Sisneros had sent a letter to me, which was apparently intercepted by police and never delivered. I

8   have never been given a copy of this alleged letter. I do not know Anthony Sisneros, and know of

9   no reason that he would write to me. The non-confidential memorandum also does not identify

10  any gang-related content in the purported letter.

11       21.     The ninth source item is yet another confidential information disclosure form.

12  This one says that I was identified as a Mexican Mafia associate "while housed in Pelican Bay

13  Security Housing Unit, on April 23, 1997." I was not housed in Pelican Bay in April of 1997; I

14  was housed in CSP-LAC. Moreover, the form says that the memo in which this information is

15  contained was written on February 7, 1997, *two months before my purported housing in Pelican*

16  *Bay*. I was in Lancaster on February 7, 1997 as well.

17       22.     The tenth source item is a CDC 128-B form about a letter allegedly found in my

18  property on March 10, 1997, allegedly addressed to Raul Mendoza. I do not know Raul Mendoza.

19  I have never seen this letter before. Nor does there appear to be any gang-related content in the

20  letter. This source item was originally used against me in 1997, but was rejected by the Special

21  Services Unit. At the time, a copy of the actual letter was not provided to me. This is the first

22  time, 12 years later, that a copy has been provided to me. I do not recognize the document, and

23  never had it in my possession.

24       23.     The eleventh source item is another CDC 128-B form from 1997. This one

25  concerns a letter allegedly found in my cell, not addressed to me, written by "Antonio G.

26  Hernandez." I have never possessed this letter, and do not know Antonio Hernandez. The 128-B

27  form claims that Antonio Hernandez is an EME associate, but does not explain how this

28  identification was supposedly made.

4

24.     The twelfth source items is yet another 128-B form from 1997. This one concerns a card allegedly found in my cell, not addressed to me, written by "Raymond Bracamonte." The form says my alias is "Huerito," which it never was in prison. I have never possessed this card, and do not know Raymond Bracamonte. The 128-B form claims that Raymond Bracamonte is an EME associate, but does not explain how this identification was supposedly made.

25.     The CDC 1030 forms are all sponsored by IGI Short, who was apparently in charge of this "investigation." IGI Short recently prepared a validation package for another inmate that was rejected by the Special Services Unit. According to that inmate, IGI Short told him that IGI Short would get him, even if he had to lie to do so.

26.     The CDC 1030 forms in the new validation package were not previously disclosed to me. I saw them for the first time when I was given the new gang validation package. At my annual SHU indeterminate reviews I was provided with a CDC form 812(a) which did not contain any references to these CDC 1030 forms.

Executed this 17th day of September 2009, Crescent City, California.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Carlos Castro

5

# EXHIBIT A

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT CELL SEARCH RECEIPT

DATE: 04-27-09          TIME: 1415          UNIT/CELL: C10-209

**INMATE ASSIGNED BED AND APPLIANCE:**

| INMATE (L): CASTRO | CDC# C69975 | INMATE (U): | CDC#: |
|---|---|---|---|
| TELEVISION/RADIO SERIAL#: | | TELEVISION/RADIO SERIAL#: | |
| ☒ WORKING   ☐ NOT WORKING | | ☐ WORKING   ☐ NOT WORKING | |

**CONDITION OF CELL:**

☒ NEAT   ☐ CLEAN   ☐ DIRTY   ☐ NEEDS REPAIRS/COMMENT: _Full_

**ITEMS CONFISCATED:**

DESCRIPTION/LOCATION/DISPOSITION (L)

All Paperwork taken
to be returned when
finished Searching PGI

DESCRIPTION/LOCATION/DISPOSITION (U)

**DISCIPLINARY DOCUMENTATION:**

☐ CDC 115   FOR _____ OFFICER _____
☐ CDC 128A   FOR _____ OFFICER _____

**SEARCHED BY:**

D. Short
PRINT NAME          SIGNATURE

J. Silveira
PRINT NAME          SIGNATURE

Cell searches are not intended as punishment. Staff are responsible for ensuring they respect inmate's property during searches. Staff are to properly document all items confiscated during the search and their disposition. A copy of this Worksheet/Receipt will be given to the cell occupant(s) when the search is completed.

ORIGINAL: HOUSING UNIT
        INMATE(S) ASSIGNED TO CELL

2007  PBSP 4692A

# EXHIBIT B

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT CELL SEARCH RECEIPT

**DATE:** 5-28-09     **TIME:** 1840     **UNIT/CELL:** C10 209

**INMATE ASSIGNED BED AND APPLIANCE:**

| INMATE (L): CASTRO    CDC#: C69975 | INMATE (U): _____    CDC#: _____ |
|---|---|
| TELEVISION/RADIO SERIAL#: 00216 | TELEVISION/RADIO SERIAL#: _____ |
| ☒ WORKING     ☐ NOT WORKING | ☐ WORKING     ☐ NOT WORKING |

**CONDITION OF CELL:**

☐ NEAT     ☐ CLEAN     ☐ DIRTY     ☐ NEEDS REPAIRS/COMMENT: _____

**ITEMS CONFISCATED:**

| DESCRIPTION/LOCATION/DISPOSITION (L) | DESCRIPTION/LOCATION/DISPOSITION (U) |
|---|---|
| REMOVE T.V. AND EARPHONES | |
| SENT TO SHU PROPERTY | |
| DUE TO APPLIANCE RESTRICTION | |

**DISCIPLINARY DOCUMENTATION:**

☐ CDC 115    FOR_____ OFFICER
☐ CDC 128A    FOR_____ OFFICER

**SEARCHED BY:** C/O I. PARKER J Par

PRINT NAME        SIGNATURE

PRINT NAME        SIGNATURE

Cell searches are not intended as punishment. Staff are responsible for ensuring they respect inmate's property during searches. Staff are to properly document all items confiscated during the search and their disposition. A copy of this Worksheet/Receipt will be given to the cell occupant(s) when the search is completed.

ORIGINAL: HOUSING UNIT
       INMATE(S) ASSIGNED TO CELL

2007 PBSP 4692A

# EXHIBIT C

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 128-B (05/08)

| NAME CASTRO, Carlos | CDC NUMBER C69975 | INSTITUTION/PRISON PELICAN BAY STATE PRISON | HOUSING C10-209L |
|---|---|---|---|

On 7/27/2009, an investigation was initiated into your suspected membership and/or association with a prison gang and/or disruptive group recognized by the California Department of Corrections and Rehabilitation as defined in Section 3000 of the California Code of Regulations. The investigation revealed sufficient evidence to identify you as a:

☐ MEMBER ☒ ASSOCIATE ☐ IN-ACTIVE OF THE ☒ PRISON GANG ☐ DISRUPTIVE GROUP:

## MEXICAN MAFIA

An interview relative to this investigation and suspected gang affiliation shall be held not less than 24-hours from the date of this notification unless otherwise requested by you in writing. During this interview, you will be given an opportunity to be heard and have your opinion documented relative to the evidence considered in this validation. Written rebuttals may be submitted at the time of the interview.

DISCLOSURE OF EVIDENCE

The following source documents were considered in your identification as a member or associate of the aforementioned prison gang or disruptive group. All confidential documents shall be disclosed via CDC Form 1030, Confidential Information Disclosure Form. Each source document shall be identified by type (I.E. CDC 128-B, CDC 115, Confidential Report, etc.) and date of the report.

☐ SELF ADMISSION:
☒ TATTOOS AND SYMBOLS: CDCR 128-B dated April 28, 2009, authored by S. Burris, CDCR 128-B dated July 07, 2006, authored by D. Mount.
☒ WRITTEN MATERIAL: CDCR 128-B dated July 23, 2008, authored by S. Burris. CDCR 128-B dated March 13, 1997, authored by A.M. Gonzales.
☐ PHOTOGRAPHS:
☒ STAFF INFORMATION: Special Services Unit Report dated December 22, 2000, authored by D. Evanilla.
☐ OTHER AGENCIES:
☐ ASSOCIATION:
☒ INFORMANTS: Confidential Memorandum dated July 21, 2008, authored by A. Barneburg.
☐ OFFENSES: (GANG RELATED):
☐ LEGAL DOCUMENTS:
☐ VISITORS:
☒ COMMUNICATIONS (MAIL/NOTES): CDCR 128-B dated March 11, 1997, authored by A.M. Gonzales, CDCR 128-B dated March 13, 1997, authored by A.M. Gonzales.
☒ DEBRIEFING REPORTS: Confidential Memorandum dated February 16, 2009, authored by G. Parker, Confidential Memorandum dated March 4, 2004, authored by F.C. Vanderhoofven, Confidential Memorandum dated November 15, 2005, authored by J. Bales and Confidential Memorandum dated February 7, 1997, authored by B.J. O'Neill.

Copies of all documents and/or disclosures were provided to the inmate as required per CCR Section 3378 and Departmental Operations Manual (DOM) 52070.21.1 by:

| NAME _J. Pieren_ | CLASSIFICATION Sgt. | DATE 8/20/2009 | TIME 0900 |
|---|---|---|---|

Additional comments: (Use this space to record any comments made by the inmate at the time of disclosure)

Orig: C-File
cc: OCS
IGI Unit
Inmate

**GANG VALIDATION**
DATE: 8/20/2009      **EVIDENCE DISCLOSURE AND INTERVIEW NOTIFICATION**      CDCR 128B

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                        CDCR 128-B

NAME and NUMBER: **CASTRO, Carlos**        **C-69975**    HOUSING: **C10-209L**

On April 28, 2009, while assigned as the Institutional Gang Investigator (IGI), I conducted a search of the property belonging to Inmate Carlos **CASTRO, C-69975**. The purpose of this search was to ascertain CASTRO's current gang status as an associate of the Mexican Mafia (EME) prison gang. During the search, I discovered an original inmate manufactured piece of art work, containing a symbol, which has been identified as a symbol utilized by the EME. A copy of the symbol appears below as it was discovered:



In regard to the symbol, this symbol is referred to as the **"Shield of the Eternal Warrior"**, **"Eternal War Shield"** or **"G Shield"** (due to its design). This symbol is adopted from the Aztec culture, in which only the most elite warriors were able to possess this design on their war shields. The Mexican Mafia prison gang has perverted many symbols from the Aztec, Mayan and Toltec culture. The EME practices brain washing ideology, in which they use the symbols from these cultures to suit their purposes. Through investigations and interviews, the "Shield of the Eternal Warrior" has been identified as a symbol utilized by members and associates of the Mexican Mafia prison gang to show their allegiance and loyalty to the EME. Based on my training an experience as a gang investigator, I have concluded that CASTRO is demonstrating his devotion for the EME prison gang by drawing a known gang symbol, and retaining it in his possession.

Per the California Code of Regulations, Title 15, Division 3, Chapter 1, Article 10, Section 3378 (c)(8)(B), this information may be utilized as one (1) independent source item, **"SYMBOLS"**, identifying CASTRO's status as an associate of the **"Mexican Mafia"** prison gang.

S. Burris
Correctional Officer
Institutional Gang Investigations
Pelican Bay State Prison

DATE: **4/28/2009**                  **GANG INFORMATION**
                                            **"SYMBOLS"**                    **GENERAL CHRONO**

                                                                                          **2**

STATE OF CALIFORNIA                                               DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C69975                INMATE NAME:    CASTRO, Carlos

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   ☒ a)    Active/Inactive Review

   ☐ b)    Prison Gang Validation              Submitted by, D. Short

   ☐ c)    CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    __N/A__    .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  The confidential source has previously provided information which has proven to be true.

   b) ☒  Other confidential sources have independently provided the same information.

   c) ☒  This information provided by the confidential source is self-incriminating.

   d) ☒  Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

   e) ☐  The confidential source is the victim.

   f) ☐  Staff report, the information was confiscated and not solicited by or intended for staff.

   g) ☐  Other (Explain) _____

3) Disclosure of information received.

Confidential Memorandum dated 2/16/2009, authored by G. Parker. Specifically you, Carlos CASTRO, were identified as being a Mexican Mafia Associate. The informant identified you as "Huero from Primera Flats". This informant made this identification in September of 2006.

   The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

   Confidential Memorandum dated 2/16/2009, authored by G. Parker, in the confidential section of the Central File.

---

J. Pieren, Sgt.            _____         8-20-2009
                          STAFF SIGNATURE, TITLE            DATE DISCLOSED
              DISTRIBUTION: WHITE —Central File; GREEN — Inmate; YELLOW — Institution Use

3

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER     C69975                 INMATE NAME:     CASTRO, Carlos

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    ☒ a)    Active/Inactive Review

    ☐ b)    Prison Gang Validation              Submitted by, D. Short

       ☐ c)    CDC-114-D, Order and Hearing for Placement in Segregated Housing dated     **N/A**

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐   The confidential source has previously provided information which has proven to be true.

    b) ☐   Other confidential sources have independently provided the same information.

    c) ☒   This information provided by the confidential source is self-incriminating.

    d) ☒   Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

    e) ☐   The confidential source is the victim.

    f) ☐   Staff report, the information was confiscated and not solicited by or intended for staff.

    g) ☐   Other (Explain)

3)  Disclosure of information received.

Confidential Memorandum dated 7/21/2008, authored by A. Barneburg.  Specifically you, Carlos CASTRO, have been identified as being a "Person of influence within the Mexican Mafia."  The informant knew this because he was given orders, by you, to assault staff at his first opportunity.  These instructions were given in April of 2008.  The informant identified you as "Huero" who lives on the upper tier, in C Pod of C-10.

    The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.
                       (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

    Confidential Memorandum dated 7/21/2008, authored by A. Barneburg, in the confidential section of the Central File.

J. Pieren, Sgt.          _____          **8-20-2009**
                STAFF SIGNATURE, TITLE          DATE DISCLOSED

    DISTRIBUTION: WHITE —Central File;  GREEN — Inmate;  YELLOW — Institution Use

4

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (6-87)

NAME and NUMBER    CASTRO    C-69975    CELL:  C10-209L

On July 23, 2008, while assigned to the Institutional Gang Investigations Unit, I searched the property of inmate **Robert AMEZCUA, H-11889, a.k.a. "Flaco from Santa Ana,"** a validated Mexican Mafia (EME) associate, date of birth, March 31, 1971, currently housed in Security Housing Unit, Facility C, Unit 10, Cell 109L.  Found amid the property of AMEZCUA was:

One original hand drawn inmate manufactured birthday card. On the inside of the birthday card is a depiction of a woman holding a pistol in each hand, with the date of 08 in the bottom right corner. The card is signed by four inmates utilizing their monikers or a version of their moniker. The following is a list of monikers as it appears on the card.

"*OS*" Identified as **Johnny MONTERREZ, P-50731**, aka "Osito/Little Bear from Fullerton," validated EME associate.

"*H*" Identified as Carlos CASTRO, C-69975, aka "Huerito from Primera Flats," validated EME associate.

"*Gangs*" Identified as **Henry ESTRADA, P-65453**, aka "Gangster from North Side Colton," non validated EME associate.

"*Bandit*" Identified as **Jose CERVANTES, J-85717**, aka "Bandit from Loco Park," validated EME associate.

All four of these inmates, including AMEZCUA are housed in the same pod within Facility C, Unit 10. Although these EME affiliates are housed within the same pod, there are also two White inmates and one northern Hispanic inmates in the same pod, who did not sign the birthday card going to AMEZCUA. By only EME affiliates signing the card it is apparent that this was a birthday card sent among EME affiliates only. This documentation meets the criteria for gang involvement as prescribed in CCR, Title 15, Section 3378 (c) (8)(G), Association.

This document should be used as one source point of validation/direct link for the above mentioned inmates.

ORIG    :  C-File
cc    :  GANGS

S. BURRIS
Correctional Officer
Institutional Gang Investigations

DATE    07-23-08    GANG CHRONO    PBSP

DO NOT ISSUE COPY OF CARD TO INMATE

5

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
                                                                            CDC-128 B (8-87)

**NAME and NUMBER**     CASTRO              C-69975          **CELL:**   C10-209L

On July 07, 2006 I conducted a search of the personal property of CASTRO.  During the search I discovered 2 separate hand drawn picture photocopies.  Both contained the Mactlactlomei (3DOTS OVER 2 LINES).  The first copy is of an Aztec Chief and it was singed "FLACO" with the Mactlactlomei in the lower right hand corner.  The second is of a woman with ancient Aztec ruins in the back ground with the words "Kay Kay INK" and the Mactlalomei in the lower left hand corner. This photocopy is signed by F. Fernandez "02", indicating the year 2002.

The Mactlactlomei is the Mayan symbol for the number 13 (3 dots over 2 lines ≡ ). This symbol and number corresponds to the thirteenth letter of the alphabet, which is the letter "M". "M" in the Spanish language is pronounced "EME". Southern Mexican or "Sureño" gang members who associate themselves with the EME prison gang utilize this symbol to show their allegiance and loyalty to the EME. The Law Enforcement and Investigations Unit (LEIU) has established the credibility regarding the meaning of this symbol, therefore these drawings meet criteria set forth in California Code of Regulations (CCR) 3378 c)(8)(B), Symbols.

\photo copy of these drawings are attached.  They are considered contraband and are placed in the central file for review only.

RIG    :   C-File
;      :   GANGS                               D. MOUNT
           Inmate                              Correctional Officer, Institutional gang Investigation

**ATE**    07-07-2006                          PBSP          **GANG CHRONO**

This document meets the
validation requirements
established in CCR Title 15
Section 3378

Date: 7-7-06                                                                      6

STATE OF CALIFORNIA                                         DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C69975              INMATE NAME:    CASTRO, Carlos

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    ☒ a)   Active/Inactive Review

    ☐ b)   Prison Gang Validation              Submitted by, D. Short

    ☐ c)   CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    **N/A**

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☒  The confidential source has previously provided information which has proven to be true.

    b) ☒  Other confidential sources have independently provided the same information.

    c) ☒  This information provided by the confidential source is self-incriminating.

    d) ☒  Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

    e) ☐  The confidential source is the victim.

    f) ☐  Staff report, the information was confiscated and not solicited by or intended for staff.

    g) ☐  Other (Explain)

3) Disclosure of information received.

Confidential Memorandum dated November 15, 2005, authored by J. Bales.  You (CASTRO) have been identified as a Mexican Mafia associate conducting EME activities for validated EME associate Larry Caballero, CDC# E15100.  This activity occurred in late 1999.

    The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

    Confidential Memorandum dated November 15, 2005, authored by J. Bales, in the confidential section of the Central File.

J. Pieren, Sgt.                                                            8-20-2009
              STAFF SIGNATURE, TITLE                                DATE DISCLOSED
          DISTRIBUTION:  WHITE —Central File;  GREEN — Inmate;  YELLOW — Institution Use

7

STATE OF CALIFORNIA                                       DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C69975                  INMATE NAME:    CASTRO, Carlos

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    ☒ a)    Active/Inactive Review

    ☐ b)    Prison Gang Validation            Submitted by, D. Short

    ☐ c)    CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    **N/A**

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☒  The confidential source has previously provided information which has proven to be true.

    b) ☒  Other confidential sources have independently provided the same information.

    c) ☒  This information provided by the confidential source is self-incriminating.

    d) ☒  Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

    e) ☐  The confidential source is the victim.

    f) ☐  Staff report, the information was confiscated and not solicited by or intended for staff.

    g) ☐  Other (Explain)

3)  Disclosure of information received.

Confidential Memorandum dated March 4 2004, authored by F.C. Vanderhoofven.  You (CASTRO) have been identified as an EME associate who was directed by validated Mexican Mafia (EME) member David "Spider" Gavaldon, CDC# C15376, to hold a weapon for the gang.  This occurred on December 19, 2000.

    The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

    (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

    Confidential Memorandum dated March 4 2004, authored by F.C. Vanderhoofven, in the confidential section of the

J. Pieren, Sgt.            _____            8-20-2009
                          STAFF SIGNATURE, TITLE                 DATE DISCLOSED
                DISTRIBUTION:  WHITE ---Central File;  GREEN — Inmate;  YELLOW — Institution Use

8

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C69975                    INMATE NAME:    CASTRO, Carlos

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   ☒ a)   Active/Inactive Review

   ☐ b)   Prison Gang Validation              Submitted by, D. Short

   ☐ c)   CDC-114-D, Order and Hearing for Placement in Segregated Housing dated     N/A

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐   The confidential source has previously provided information which has proven to be true.

   b) ☐   Other confidential sources have independently provided the same information.

   c) ☐   This information provided by the confidential source is self-incriminating.

   d) ☐   Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

   e) ☐   The confidential source is the victim.

   f) ☐   Staff report, the information was confiscated and not solicited by or intended for staff.

   g) ☒   Other (Explain)
           California Department of Corrections Special Services Unit Investigation.

3) Disclosure of information received.

Confidential Memorandum dated December 22, 2000, authored by D. Evanilla. The investigation identified you (CASTRO) as communicating with validated Mexican Mafia associate, Anthony "JoJo" Sisneros, CDC# D68626, while he was on parole. This occurred in December of 2000.

The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.
(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

   Confidential Memorandum dated December 22, 2000, authored by D. Evanilla, in the confidential section of the Central

J. Pieren, Sgt.                                                              8-20-2009
                     STAFF SIGNATURE, TITLE                              DATE DISCLOSED
           DISTRIBUTION: WHITE —Central File;  GREEN — Inmate;  YELLOW — Institution Use

9

STATE OF CALIFORNIA                                   DEPARTMENT OF CORRECTIONS
CDC 1030 (6/2009)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    C69975          INMATE NAME:   CASTRO, Carlos

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    ☒ a)   Active/Inactive Review

    ☐ b)   Prison Gang Validation         Submitted by, D. Short

      ☐ c)   CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    **N/A**

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☒   The confidential source has previously provided information which has proven to be true.

    b) ☒   Other confidential sources have independently provided the same information.

    c) ☒   This information provided by the confidential source is self-incriminating.

    d) ☒   Part of the information provided is corroborated by through investigation or by information provided by non-confidential sources.

    e) ☐   The confidential source is the victim.

    f) ☐   Staff report, the information was confiscated and not solicited by or intended for staff.

    g) ☐   Other (Explain)

3) Disclosure of information received.

Confidential Memorandum dated February 7, 1997, authored by B.J. O'Neill. You (CASTRO) have been identified as being a Mexican Mafia associate, while housed in Pelican Bay Security Housing Unit, on April 23, 1997. You were identified as "Huero from Flats".

    The information is considered reliable Per California Code of Regulations (CCR), Title 15, Section 3321 as indicated above in part 2.

        (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (ie: CDC-128-B of 5-15-86 in the confidential material folder)

    Confidential Memorandum dated February 7, 1997, authored by B.J. O'Neill, in the confidential section of the Central File.

J. Pieren, Sgt.        _(signature)_        8-20-2009

        STAFF SIGNATURE, TITLE        DATE DISCLOSED

    DISTRIBUTION:  WHITE —Central File;  GREEN — Inmate;  YELLOW — Institution Use

10

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
                                                                                          CDC 128-B (8-87)

NAME AND NUMBER                   CASTRO, C.        C-69975

On March 10, 1997, while conducting a search of the personal property of inmate Castro, C., C-69975
AKA: "Huerito", a letter was confiscated which was addressed to Raul Mendoza, C-35193, AKA: "Topo"
validated Mexican Mafia (EME) Associate.   On the front of the envelope is written "Para (for): Huero
identified as Castro, C-69975, De (from) Tozani (Topo), identified as Mendoza, C-35193.

The letter was confiscated from inmate Castro's property and will be used in validation purposes.

A.M. Gonzales                              M. Ayala
Institutional Gang Investigator            Assistant Institutional Gang Investigator
CSP-Los Angeles County                     CSP-Los Angeles County

Orig:   C-FILE
cc:     C & PR
        Lt. File
        Writer
        Inmate

DATE:    3/11/97          GANG RELATED        CSP/LAC    GENERAL CHRONO

11

Subject Val.
1992

Valentina Lara
1122 Columbia #208
Dallas, Texas
75214

PM
21 FEB
1995

Raul Mendoza C-35198
P.O. Box 7500  C5-113
Cresent City, Ca. 95532

FEB 28 1995

PARA: HUERO
DE: TOZANI

1/31/98

12

Raul,

Hi how are you? I got your address from cookie and thought you might like to hear a new voice. I'm 19 years old. My birthday is in July on the 19th. I'm 5 feet & 4½ inches tall. I way a hundred and sixety pounds and I have reddish/brown hair. I just graduated from high school last May. I'm living in a 2 story house with 4 other people. We live in east Dallas. I've lived in Texas all my life. I've only been out of Texas 2 once to drive up to Washington state and up to Indiana. I hope you had a good Thanks-giving. My favorite class in school was choir because I love to sing. My favorite hobby is riding horses. I also love to fish and go camping. Up until about 2 months ago I used to live next to a lake. So I guess you could say I'm an outdoors

13

girl. What did I want to
be when I grew up? I
wanted to be an interior
decorator. But I had to
drop out of college because I
got pregnant and I had to
move out of my parents house.
But during the 5 th month I
miscarried. And that was
about 3-4 weeks a go. Well
I have to go for now but I
would like to hear from
you.

your new
found
friend

La Giggles

14

STATE OF CALIFORNIA                                                              DEPARTMENT OF CORRECTIONS
                                                                                CDC 1284 (3-87)
**NAME AND NUMBER**                    CASTRO, C.        C-69975

On March 11, 1997, while conducting a search of the personal property of inmate Castro, C, (AKA: Huerito), C-69975, I discovered a hand written letter authored by Hernandez, Antonio, AKA: "Toto", D-87215, a validated Mexican Mafia (EME) Associate.

The letter was confiscated from inmate Castro's property and will be used in validation purposes.

---

A.M. Gonzales
Institutional Gang Investigator
CSP-Los Angeles County

M. Ayala
Assistant Institutional Gang Investigator
CSP-Los Angeles County

Orig:   C-FILE
cc:     C & PR
        LI. File
        Writer
        Inmate

**DATE:**   3/13/97              **GANG RELATED**        **CSP/LAC**    **GENERAL CHRONO**

15

10-30-96

Hi Joann.

hope when you recieve this few lines they will find you in the best of health, as far my self just doing some time.   Now first of all, I would like to thank you for sending Me those papers, true just got them today wich is the 29 of October, yeah! it took little over a Month for your letter to get to Me, cause aint no longer at Pelican Bay, Matter fact, I got transfer to Corcoran About 10 Months ago, thats why I'm still surprise by your letter, because to tell you the truth, Ive still dont know how did you happen to have those Papers? cause I dont recall losing them! and if you dont Mine, you think that you can let Me Know, who give you the papers so you can send them to Me? Also I hope My letter wont cause you any kind of trouble, because thats not My intencion, the only Reason I'm writting you is to see if you can answer My question to ease My Mind about the papers? also Sorry if this letter looks kind a Messy, but Right now I'm in the "hole" and the pen fillers they give us are not good they smear a lot as you can see, they are cheap.

Well I'm not going to bother you no More with My sad stories about being in here, I just hope that you can give Me a Resoncan for inma

16

Question; thats all I ask, so take care,

Con Mucho Respeto

Antonio G. Hernandes

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128-B (8-87)

NAME AND NUMBER          CASTRO, C.          C-69975

On March 11, 1997, while conducting a search of the personal property of inmate Castro, C, (AKA: "Huerito"), C-69975, I discovered a hand written Card authored by Bracamonte, Ray, identified as Bracamonte, Raymond, AKA: "Bracamonte Naido", C-61713, a validated Mexican Mafia (EME) Associate. The card was addressed to Huerito, identified as inmate Castro, C., C-69975.

The card was confiscated from inmate Castro's property and will be used in validation purposes.


A.M. Gonzales
Institutional Gang Investigator
CSP-Los Angeles County

M. Ayala
Assistant Institutional Gang Investigator
CSP-Los Angeles County

Orig:    C-FILE
cc:      C & PR
         Lt. File
         Writer
         Inmate


DATE:    3/13/97          GANG RELATED          CSP/LAC     GENERAL CHRONO

18





# EXHIBIT D

STATE OF CALIFORNIA                                              DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                        CDCR 128-B (Rev. 4/74)

NAME and NUMBER: CASTRO, Carlos          C69975      HOUSING: C10-209L

On July 27, 2009 a validation investigation was requested by the Office of Correctional Safety (OCS) in regard to inmate Carlos **CASTRO**, CDC# C69975.  OCS has requested this investigation be done as a new validation.

On 8/21/2009, IGI completed an investigation of inmate **CASTRO**, moniker "Huero" from Primera Flats, regarding his current gang status.  (*Hereafter* **CASTRO** *will be referred to as SUBJECT*)  Though this is not an update, subjects validation history begins on 5/19/1997, wherein SUBJECT was originally validated under CDC number C69975 as an associate of the **Mexican Mafia** prison gang.  Per the California Code of Regulations (CCR) Title 15, Section 3378, there is sufficient evidence to validate SUBJECT as an associate of the **Mexican Mafia** prison gang.

The following documents are being submitted relative to this investigation:

1) **Source Document (Written Material)** CDCR 128-B dated April 28, 2009, authored by S. Burris.

2) **Source Document (Debriefing Reports)** Confidential Memorandum dated February 16, 2009, authored by G. Parker.
3) **Source Document (Informants)** Confidential Memorandum Dated July 21, 2008, authored by A. Barneburg.

4) **Source Document (Written Material) Direct Link,** CDCR 128-B dated July 23, 2008, authored by S. Burris.

5) **Source Document (Tattoos and Symbols)** CDCR 128-B dated July 7, 2006, authored by D. Mount.

6) **Source Document (Debriefing Reports)** Confidential Memorandum dated November 15, 2005, authored by J. Bales.
7) **Source Document (Debriefing Reports)** Confidential Memorandum dated March 4, 2004, authored by F.C. Vanderhoofven.
8) **Source Document (Staff Information) Direct Link,** Special Services Unit Report dated December 22, 2000, authored by D. Evanilla.
9) **Source Document (Debriefing Reports)** Confidential Memorandum dated February 7, 1997, authored by B.J. O'Neill.
10) **Source Document (Communications) Direct Link,** CDCR 128-B dated March 11, 1997, authored by A.M. Gonzales.
11) **Source Document (Communications) Direct Link,** CDCR 128-B dated March 13, 1997, authored by A.M. Gonzales.
12) **Source Document (Written Material) Direct Link,** CDCR 128-B dated March 13, 1997, authored by A.M. Gonzales.

## DISCLOSURE AND NOTIFICATION

SUBJECT has a TABE Score of 12.9/GED, therefore, SUBJECT does not require staff assistance.  SUBJECT is not a participant in the Mental Health Delivery System.

On 8/20/2009, at 0900, SUBJECT was disclosed all information being utilized in the validation process.  If applicable, SUBJECT was disclosed confidential information via CDCR 1030 (Confidential Information Disclosure Form).  SUBJECT was further advised an interview regarding the information obtained during this investigation would be held not less than 24-hours from the time of the disclosure.

## INTERVIEW

On 8/21/2009, at 0900 hours, SUBJECT was interviewed regarding the documents utilized in the prison gang validation package to identify SUBJECT as an associate of the **Mexican Mafia** prison gang.  SUBJECT provided the following statement addressing all documents used in the review process.  "I am not associated with any gang."
In addition to the verbal statement SUBJECT provided a written rebuttal to each source item.  The rebuttal will be addressed individually below.

**In regard to source Item #1 - #7 and #9:**
SUBJECT alleges these source items were "fished for" or "produced" in retaliation for his litigation. This allegation is totally baseless and without merit. Pelican Bay IGI is under constant scrutiny for the simple fact of the type of prisoners that are housed here. There is ample evidence of Mexican Mafia gang activity to be found in SUBJECTS central file. The inference that IGI has the resources or the need to "fish" or "produce" gang activity is absurd.

**Source Item #1:**
SUBJECT'S claim that the sketch was not in his property is completely false. Other correctional staff was personally involved in the search of SUBJECT'S property and witnessed officer Burris locate the sketch. SUBJECT also claimed that this symbol did not represent actual gang activity. This symbol is utilized by Mexican Mafia members and associates showing allegiance to the Mexican Mafia. The symbol represents Mexican Mafia members' and associates' commitment as soldiers of the Mexican Mafia. The exploitation of this symbols and the adaptation of the symbol by the Mexican Mafia shows a new and distorted utilization of this symbol outside of its original and intended symbolization. The Mexican Mafia Prison Gang has altered the symbol from its original meaning and distorted the symbols meaning to portray allegiance to the "EME". The credibility of this report was established from information received from former members and associates of the Mexican Mafia prison gang. Additionally distinctive symbols, body markings, hand signs, and gang graffiti have been identified as having a direct correlation with specific prison gangs. Gang coordinators and investigators receive training and frequently updated information to identify specific symbols and tattoos utilized by gangs.

**Source Item #2:**
SUBJECT claims the information is false. The California Code of Regulations (CCR), Title 15, has instituted guidelines regarding the method that shall be used to establish the reliability of a confidential informant. In this case the informant was deemed reliable meeting, not one, but three of the criteria. The comment that this source item was not disclosed to him in February 2009 is probably true. There is no requirement for the Department of Corrections to disclose confidential documents to inmates until they are used against them.

**Source Item #3:**
As in item #2, this source was also deemed reliable. The reason there was no Rules Violation Report (RVR) issued is that the Title 15, Section 3321 (b)(1), states that no decision shall be based on a confidential source unless the information is corroborated through another source. This information was not corroborated by a second informant who also had firsthand information about the event. Therefore, there was no RVR generated.

**Source item #4:**
This item was signed by SUBJECT, with three other validated EME affiliates, and given to a third EME associate. This birthday card was not signed by any inmate of any other affiliation. Therefore, by excluding the other races and affiliations it is reasonable to conclude that SUBJECT is actively associating with the Mexican Mafia.

**Source Item #5:**
As in source #1 SUBJECT also claims this piece of evidence was not in his property, implying that officer D. Mount produced this artwork himself and planted it in SUBJECTS property. This allegation is another inference that IGI has the resources or the need to "fish" or "produce" gang activity. As stated similarly above, the credibility of this report was established from information received from former members and associates of the Mexican Mafia prison gang. Additionally distinctive symbols, body markings, hand signs, and gang graffiti have been identified as having a direct correlation with specific prison gangs. Gang coordinators and investigators receive training and frequently updated information to identify specific symbols and tattoos utilized by gangs. This statement applies to the Mactlactlomei in that the EME have exploited this symbol to represent loyalty to the gang.

**Source Item #6:**
As in source item #1 and #2, SUBJECT claims the information is false. Again, this source has been deemed reliable per CCR Title 15, meeting, not one, but four of the criteria. The credibility of this source has been established.

These items below are older than 6 years old.  As stated above, this investigation is being conducted at the request of OCS.  Therefore, as a new validation all source items that meet current criteria will be used.

**Source Item #7:**
As in source item #1, #2 and #6, SUBJECT claims the information is false.  Again, this source has been deemed reliable per CCR Title 15, meeting, not one, but four of the criteria. The credibility of this source has also been established.

**Source Item #8:**
SUBJECT states that he was not corresponding with the validated EME associate and parolee J. SISNEROS.  This claim is difficult to believe as truthful as PBSP investigative staff confiscated letters, coming from SISNEROS, addressed to SUBJECT.

**Source Item #9:**
SUBJECT also claims the information is false adding the inference that there is an attempt at some sort of deception or unscrupulous activity on behalf of IGI.  The source, who was a validated EME associate, simply identifies SUBJECT as a fellow EME associate.  During this review an error was found.  It was reported to SUBJECT, on a CDC form 1030, that he was identified as an associate on April 23, 1997.  This date should reflect the date of the report, which is February 7, 1997.

**Source Item #10:**
Again SUBJECT claims this item is false.  This item was found in the property of SUBJECT as stated in the CDC 128-B.  The envelope has writing on it that says "Para: Huero, De: Tozani", that is 'To: SUBJECT, From: Raul "Tazani" Mendoza, a validated EME inactive associate.  The statement by SUBJECT "I do not know inmate Mendoza" is simply less than truthful.  The allegations that; this source item has been previously been rejected by Special Services Unit (SSU), that A.M. Gonzales does not recall this item and that the original letter is lost is unknown to this investigator at this time.

**Source Item #11 and #12:**
The rebuttal that SUBJECT gives, for these two items are, for all intents and purposes, identical to the rebuttal for item #10.  Subject is obviously being less than truthful about his knowledge of these two items.


**CONCLUSION**

Source document dated June 26, 1991 will not be submitted at this time. In 1997, when this document was initially used, this document would have qualified as a validating document.  However, using today's standards, this document would not meet current validation criteria as it would be viewed as a "laundry list" type of document.  This debrief speaks of an assault on an inmate that SUBJECT was possibly involved in.  This portion of the document has no bearing on the validity of the document.  It was used as a source item in the past due to SUBJECT being listed, by the debriefing inmate, in a manner that will not meet current standards due to the CASTILLO vs. ALAMEDA settlement, Case No. C-94-2847-MJJ-JCS.

The IGI has concluded there is sufficient evidence to validate **Carlos CASTRO, aka "Huero"** from Primera Flats as an associate of the **Mexican Mafia** prison gang.

The aforementioned information will be forwarded to the Office of Correctional Safety for review and acceptance of SUBJECT'S prison gang validation.

J. PIEREN
Assistant-Institutional Gang Investigator
Pelican Bay State Prison

J. McMILLAN
Institutional Gang Investigator
Pelican Bay State Prison

Orig:  C-File
cc:    OCS
      IGI Unit
      Inmate

**GANG VALIDATION CHRONO**
**(UPDATE/REVIEW)**

DATE:  8/21/2009

CDCR 128B