1   EDMUND G. BROWN JR.
    Attorney General of California
2   THOMAS S. PATTERSON
    Supervising Deputy Attorney General
3   BRENDAN M. KENNY
    Deputy Attorney General
4   State Bar No. 237969
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 703-5744
6     Fax:  (415) 703-5480
      E-mail:  Brendan.Kenny@doj.ca.gov
7   *Attorneys for Defendants Ayers, Terhune, Ayala,*
    *Jordan, Martinez, Derusha, Batchelor, Yarborough,*
8   *Hood, Scribner, Campbell, Stokes, and Gonzales*

9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN FRANCISCO DIVISION
12

13

14  **CARLOS CASTRO,**                      C 98-4877 WHA (PR)

15                          Plaintiff,      **DEFENDANTS' REPLY TO**
                                            **PLAINTIFF'S OPPOSITION TO**
16          v.                              **MOTIONS TO DISMISS AND FOR**
                                            **SUMMARY JUDGMENT**
17
    **CAL. TERHUNE, et al.,**               Date:        October 8, 2009
18                                          Time:        8:00 a.m.
                            Defendants.     Courtroom:   Courtroom 9, 19th floor
19                                          Judge:       The Honorable William Alsup
                                            Trial Date:  November 2, 2009
20                                          Action Filed: December 22, 1998

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

Introduction .................................................................................................................... 1

Argument ....................................................................................................................... 2

    I.    Castro's argument that is framed as "objections to evidence" creates no
          disputed facts.......................................................................................... 2

          A.    Castro's 1991 gang-validation ................................................. 2

          B.    Castro's 1995 deletion ............................................................ 2

          C.    1997 gang-validation............................................................... 2

          D.    Post 1997 gang-validation....................................................... 2

          E.    Castro's re-validation ............................................................. 3

    II.    Castro's due-process claim is moot because his 1997 gang-validation is no
          longer at issue.......................................................................................... 3

          A.    Castro's opportunity to be heard during the re-validation mooted his
                claim that he did not have an opportunity during his 1997 gang-
                validation................................................................................. 3

          B.    Castro's alleged lack of opportunity to be heard in 1997 was cured
                by the re-validation, and no further remedies are available. ...... 5

          C.    The narrow "capable of repetition, yet evading review" mootness
                exception does not apply to Castro's alleged denial of an
                opportunity to be heard in 1997. ............................................... 7

    III.    Evidence relied on for Castro's inactive-status reviews, not the 1997
          validation, formed the basis for Castro's segregation in security housing
          before his re-validation. ......................................................................... 11

    IV.    Defendants may rely on evidence of the re-validation and the inactive
          status reviews to show that this case is now moot. ................................. 12

    V.    Ayala and Gonzales are the only proper defendants in this action. ...................... 13

    VI.    This case must be dismissed because Castro did not exhaust administrative
          remedies concerning his opportunity to be heard by a gang investigator. ............ 14

          A.    Castro did not alert the prison to the nature of the wrong for which
                he sought redress. .................................................................. 14

          B.    Defendants did not waive the nonexhaustion defense. ............................. 16

Conclusion .................................................................................................................... 19

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

4  **C**ASES

5  *Agostini v. Felton*
6      521 U.S. 203 (1997) ............................................................................................ 5

7  *Ashker v. Schwarzenegger*
        No. C 05-03286 CW, 2009 WL 801557 (N.D. Cal. March 25, 2009) .................................. 10

8

9  *Barren v. Harrington*
        152 F.3d 1193 (9th Cir. 1998) ............................................................................ 13

10  *Basua v. Solis*
        No. C 04-2846 MMC, 2007 WL 2470100 (N.D. Cal. Aug. 27, 2007) ................................... 9

11

12  *Biggs v. Terhune*
        334 F.3d 910 (9th Cir. 2003) ............................................................................ 6

13

14  *Biodiversity Legal Found. v. Bagley*
        309 F.3d 1166 (9th Cir. 2002) ......................................................................... 8

15  *Bruce v. Ylst*
16      351 f.3d 1283 (9th Cir. 2003) ................................................................... 9, 10

17  *Burnett v. Camport*
        432 F.3d 996 (9th Cir. 2005) .......................................................................... 11

18

19  *Carey v. Piphus*
        435 U.S. 247 (1978) ................................................................................... 9

20  *City of L.A. v. Lyons*
        461 U.S. 95 (1983) ..................................................................................... 8

21

22  *Ctr. for Biological Diversity v. Kempthorne*
        C 6-07117 WHA, 2008 WL 205253 (N.D. Cal. Jan. 23, 2008) ...................................... 10

23  *Ctr. for Biological Diversity v. Lohn*
24      511 F.3d 960 (9th Cir. 2007) ......................................................................... 8

25  *Doe v. Attorney General of the U.S.*
        941 F.2d 780 (9th Cir. 1991) .......................................................................... 8

26

27  *Fund for Animals, Inc. v. Hogan*
        428 F.3d 1059 (D.C. Cir. 2005) ...................................................................... 10

28

### TABLE OF AUTHORITIES
#### (continued)

Page

*Garcia v. Stewart*
  No. C 06-6735 MMC, 2009 WL 688887 (N.D. Cal. March 16, 2009) ............................. 6, 10

*Griffin v. Arpaio*
  557 F.3d 1117 (9th Cir. 2009)............................................................................................. 14

*Guizar v. Woodford*
  282 Fed. Appx. 551 (9th Cir. 2008) .................................................................................. 9, 10

*Hampton v. Ryan*
  288 Fed. Appx. 404 (9th Cir. 2008) .................................................................................. 9, 10

*Jones v. Smalls*
  No. C 01-3237 MMC, 2002 WL 31618539 (N.D. Cal. Nov 18, 2002).................................. 6

*Leon v. Terhune*
  54 Fed. Appx. 254 (9th Cir. 2002) .................................................................................... 9, 10

*Lewis v. Solis*
  No. No. C 04-2152 JF, 2005 WL 3454137 (N.D. Cal. Dec. 14, 2005) ................................. 9

*Lopez v. Cook*
  No. C 03-1605 GEB, 2009 WL 111723 (E.D. Cal. Jan. 16, 2009)........................................ 10

*Medina v. Gomez*
  C 93-1774 TEH, 1997 WL 488588 (N.D. Cal. Aug. 14, 1997)............................................... 8

*Montgomery v. Marshall*
  No. C 92-01792 CW, 1995 WL 481620 (N.D. Cal. Aug 07, 1995) ........................................ 6

*Morrison v. Mahoney*
  399 F.3d 1042 (9th Cir. 2005)......................................................................................... 16, 17

*Myers v. Galaza*
  No. C 98-1166 MJJ, 2000 WL 868519 (N.D. Cal. Jun 16, 2000) ........................................... 6

*Porter v. Nussle*
  534 U.S. 516 (2002) ............................................................................................................ 16

*Pryer v. Evans*
  No. C 07-4025 MMC, 2008 WL 131604 (N.D. Cal. Jan. 11, 2008) ....................................... 6

*Public Utilities Com'n of State of Cal. v. F.E.R.C.*
  100 F.3d 1451 (9th Cir. 1996)............................................................................................... 8

# TABLE OF AUTHORITIES
### (continued)

Page

*Raditch v. U.S.*
   929 F.2d 478 (9th Cir. 1990) ................................................................................ 6

*Randolph v. Rogers*
   253 F.3d 342 (8th Cir. 2001) .............................................................................. 17

*Redd v. Daley*
   No. C 98-20429 JF (HRL) ................................................................................. 17

*Redd v. McGrath*
   253 Fed. Appx. 642 (9th Cir. 2007) .............................................................. 9, 10

*S. Or. Barter Fair v. Jackson County*
   372 F.3d 1128 (9th Cir. 2004) .............................................................................. 6

*Sandin v. Connor*
   515 U.S. 472 (1995) ............................................................................................. 7

*Spencer v. Kemna*
   523 U.S. 1 (1998) ................................................................................................. 8

*Strong v. David*
   297 F.3d 646 (7th Cir. 2002) .............................................................................. 14

*Struggs v. Evans*
   C 08-1495 MMC, 2008 WL 4679544 (N.D. Cal. Oct. 21, 2008) ........................... 6

*Taylor v. List*
   880 F.2d 1040 (9th Cir. 1989) ............................................................................ 13

*Toussaint v. McCarthy*
   801 F.2d 1080 (9th Cir. 1986) ............................................................................ 11

*Walters v. McGrath*
   No. C 04-0817 RMW, 2008 WL 4647379 (N.D. Cal. Oct. 20, 2008) .................... 7

*Woodford v. Ngo*
   548 U.S. 81 (2006) ............................................................................................. 16

*Wyatt v. Terhune*
   315 F.3d 1108 (9th Cir. 2003) ............................................................................ 17

**STATUTES**

United States Code, Title 42, § 1997e(g)(1) ............................................................ 17

iv

# TABLE OF AUTHORITIES
### (continued)

**COURT RULES**

Federal Rule of Civil Procedure

Rule 12 ...................................................................................................... 18
Rule 12(b) ........................................................................................... 17, 18
Rule 12(h)(1) ........................................................................................... 16
Rule 37 ...................................................................................................... 12
Rule 56 ...................................................................................................... 16

**OTHER AUTHORITIES**

California Code of Regulations, Title 15

§ 3084.2(a) ............................................................................................... 14
§ 3338(a), (d) ........................................................................................... 15
§ 3338(f)–(h) ........................................................................................... 15
§ 3378(e) ............................................................................................. 8, 12

Defs.' Reply to Pl.'s Opp. to Mots. Dismiss & Summ. J.  (C 98-4877 WHA (PR))

1

2

**INTRODUCTION**

3      Castro seeks injunctive relief for allegedly not having an opportunity to be heard before he

4      was validated as a prison-gang associate in 1997.  But Castro's recent re-validation provided him

5      with an opportunity to be heard, which cured any alleged deficiencies during the 1997 gang-

6      validation and rendered this matter moot.  And Castro's current retention in security housing is

7      based on subsequent reviews of his prison-gang status, not the 1997 gang-validation

8      Although Castro argues that his suit is not moot because his previous gang validation

9      affects his future parole chances, this argument is too attenuated to justify relief.  And regardless,

10     this case now only concerns whether Castro received sufficient process, not whether the

11     validation itself should be expunged.  Indeed, the Ninth Circuit has already confirmed that

12     sufficient evidence supported the validation.

13     Castro also contends that the case is subject to a mootness exception, arguing that it is

14     capable of repetition yet evading review.  But because litigants have ample time to adjudicate

15     challenges to gang validations—and Castro had twelve years in this case—no mootness exception

16     applies.

17     In addition, Castro failed to exhaust an administrative grievance concerning the remaining

18     claim in this suit.  Although he submitted a grievance to contend that he was not allowed to

19     review the evidence before his 1997 validation, he submitted no grievance to allege that he was

20     denied an opportunity to be heard by any gang investigator before the validation.  And contrary to

21     Castro's argument, Defendants never waived this affirmative defense.

22     Finally, this Court should dismiss all Defendants but Ayala and Gonzales from this action

23     because Castro's due-process claim involves only them.

24     ///

25     ///

26     ///

27     ///

28     ///

**ARGUMENT**

**I.    CASTRO'S ARGUMENT THAT IS FRAMED AS "OBJECTIONS TO EVIDENCE" CREATES NO DISPUTED FACTS.**

Castro filed Objections to Evidence and also included this argument in his opposition.  As a preliminary note, Castro raises only one actual evidentiary objection; otherwise, he argues about what the evidence means.  Defendants briefly respond here to these issues.

**A.    Castro's 1991 Gang-Validation**

Castro argues that he did not have a meaningful opportunity to be heard regarding the 1991 confidential memorandum during his 1991 gang validation.  (Pl.'s Opp'n Defs.'s Mots. Dismiss & Summ. J. 2:23–26.)  But Castro presents no evidence that this opportunity to be heard was meaningless.  He admits that he received due process, and his own testimony shows that it was meaningful.  (Decl. Roost Supp. Defs.' Mots. Dismiss & Summ. J. (Decl. Roost) Ex. A at 41–42, 103–104, 107.)

**B.    Castro's 1995 Deletion**

Castro argues that the 1995 memorandum deleting Castro's gang status was not provided to Castro.  (Plf.'s Opp'n 3:9–19.)  But Castro admits that he received the memorandum.  (Decl. Kenny Opp'n Pl.'s Mot. Summ. J. (Decl. Kenny Opp'n) Ex. A at 17:6–19:17.)

**C.    1997 Gang-Validation**

Castro argues that Gonzales alone sent Castro's 1997 gang-validation package to the SSU.  (Plf.'s Opp'n 4:16–20.)  But the document referenced by Castro states that the gang-validation was *received* from Gonzales, not that he sent it.  (Decl. Lichtblau Supp. Pl.'s Mot. Summ. J. Ex. DD.)

**D.    Post 1997 Gang-Validation**

Castro's argues that Defendants provided no evidence that "there was an internal audit of Mr. Castro's gang validation package."  (Pl.'s Opp'n 3:20–24.)  But the SSU form referenced by Defendants demonstrates that the piece of evidence rejected by the SSU in 1997 was approved in 2003.  (Compl. Ex. D at 1; Decl. Roost Ex. B at CF 0046.)

///

2

1    Castro argues that Defendants do not require "gang activity" to reject inactive status and

2    "will manufacture and plant such evidence in inmates' cells." (Pl.'s Opp'n 3:25–4:4.) But Castro

3    presents no competent evidence in support of this bald assertion. The declaration he cites

4    provides no support even for his claim that Defendants planted a razor blade in Castro's cell in

5    2006 and 2009. (*See* Decl. Castro Opp'n Defs.' Mot. Dismiss & Summ. J. (Decl. Castro) ¶ 25.)

6    ### E.    Castro's Re-Validation

7    Castro argues that his re-validation was procedurally deficient because the confidential

8    disclosure forms were insufficiently specific. (Pl.'s Opp'n 4:9–15.) But the confidential

9    disclosure forms gave Castro sufficient information to have an opportunity to be heard. (Decl.

10   Pieren Supp. Defs.'s Mots. Dismiss & Summ. J. (Decl. Pieren) Ex. C.)

11   Castro argues that "[m]any of the source items relied upon in the new validation should

12   have been disclosed to Mr. Castro in his 812(a) as part of his annual review." (Pl.'s Opp'n 4:25–

13   28.) But Castro provides no factual or legal authority in support of his assertion that this

14   information should have been disclosed earlier.

15   Castro argues that Sergeant Pieren has no personal knowledge regarding Castro's re-

16   validation. (Pl.'s Opp'n 4:21–25.) As such Castro alleges that Pieren's declaration is not

17   competent evidence. But Pieren personally disclosed the evidence demonstrating gang activity to

18   Castro (Decl. Pieren ¶ 17), interviewed him regarding the evidence, and received Castro's written

19   rejoinders to the evidence (*Id.* ¶ 18). Pieren and Lieutenant McMillan reviewed Castro's written

20   rejoinders and responded to them. (*Id.* ¶ 19.) They recommended Castro's validation as a

21   Mexican Mafia associate. (*Id.*) All this demonstrates personal knowledge.

22   ## II.    CASTRO'S DUE-PROCESS CLAIM IS MOOT BECAUSE HIS 1997 GANG-VALIDATION
23   IS NO LONGER AT ISSUE.

24   ### A.    Castro's Opportunity to Be Heard During the Re-Validation Mooted His Claim that He Did Not Have an Opportunity During His 1997 Gang-Validation.

25

26   Castro claims that his opportunity to be heard during the re-validation was not meaningful

27   and cannot substitute for the opportunity to be heard in 1997 because Sergeant Pieren, not

28   Gonzales, provided the opportunity to be heard, the hearing was a sham, and the hearing was

3

1    based on unreliable evidence.  (Pl.'s Opp'n 7:21–8:25.)  But the re-validation provided the

2    opportunity to be heard that Castro seeks, was properly conducted, and the sufficiency of the

3    evidence used to validate Castro is no longer an issue in this case.  In addition, the undisputed

4    facts show that Castro had a meaningful opportunity to be heard.

5         First, Castro's claim is moot despite the fact that Ayala and Gonzales did not personally

6    provide the relief Castro seeks.  Ayala and Gonzales, who worked in the IGI Unit during Castro's

7    1997 gang-validation, are sued in their official capacity for prospective injunctive relief.  If they

8    failed to provide Castro an opportunity to be heard in 1997, such a failure would be cured by an

9    official in their position.  Sergeant Pieren and the IGI Unit conducted Castro's re-validation.  This

10   provided Castro with the prospective injunctive relief he sought.

11        Second, Castro incorrectly argues that the re-validation was a sham.  Much of his argument

12   is based on the misstatement that "Defendants" have an alleged pattern of "abuse and

13   misconduct."  (Pl.'s Opp'n 10-12.)  Castro's argument is misleading from the outset, because he

14   incorrectly references supposed wrongdoing by CDCR employees who are not actually

15   defendants in this suit, and attributes it to "Defendants."  Regardless, he fails to show a direct link

16   between these supposed abuses and the alleged inadequacy of the revalidation.  His most-direct

17   attack against the actual re-validation is that it occurred on the same day that Defendants filed

18   their motion for summary judgment arguing mootness.  (Plf.'s Opp. 8:12–21.)  But this alone

19   does not show that the process was a sham.  And it also fails to acknowledge that the IGI Unit

20   was conducting an investigation of Castro months before Defendants filed their motion.  (*See*

21   Decl. Castro Supp. Pl.'s Mot. Summ. J. ¶¶ 16–17) (noting that the IGI Unit informed Castro they

22   found a razor blade during an April 2009 search of his cell).)

23        Third, all of this is really beside the point because it focuses more on the ultimate result of

24   the re-validation proceedings, rather than on whether Castro was given the process that he claims

25   was denied in 1997.  The sufficiency of the evidence is no longer an issue in this case, given that

26   this Court ruled in 1999 that Defendants relied on sufficient evidence to validate Castro because

27   "any of the three pieces of evidence in the record was sufficient to support the decision to validate

28

1   plaintiff as a gang associate," (Docket No. 31 at 8:12–14) and that the Ninth Circuit affirmed this

2   holding (Docket No. 40 at 4), as well as held that Castro received sufficient notice.  (*Id.* at 2.)

3         Now, Castro has received the process he was allegedly denied in 1997.  Castro was issued

4   supporting evidence over twenty-four hours before an interview, he responded to the evidence he

5   was provided, and he in turn received a reply from the IGI.  (Decl. Pieren ¶¶ 14–19.)  Castro

6   argues that this process was inadequate because the 1991 confidential memorandum was not used

7   as evidence for the re-validation, and that he therefore did not have an opportunity to present his

8   views on it.  But because any of the three pieces of evidence used in Castro's 1997 validation was

9   sufficient, due process did not require that Castro be heard on each piece of evidence.  Further,

10  Castro already addressed the memorandum during his 1991 gang-validation and admits that he

11  received due process during that validation.  (Decl. Roost Ex. A at 41–42, 103–104, 107.)

12  Therefore, even if Castro did not receive an opportunity to be heard regarding the memorandum

13  during his 1997 gang-validation and 2009 re-validation, the opportunities he received during his

14  1991 gang-validation satisfied due process.

15        Finally, Castro also contends that he still has not had a meaningful opportunity to be heard

16  regarding the letter from Antonio Hernandez and the postcard from Ray Bracamonte because the

17  originals of these documents and the validation folder no longer exist.  (Pl.'s Opp'n 8:1–10.)

18  Because the sufficiency of notice and the evidence used in the 1997 validation are no longer at

19  issue, all Castro required during the re-validation to moot his remaining claim was an opportunity

20  to be heard.  He received that.  Unless this Court disturbs its previous ruling, Castro is precluded

21  from now re-challenging the "law of the case" that the evidence was sufficient.  *See Agostini v.*

22  *Felton*, 521 U.S. 203, 236 (1997) ("Under [the law of the case] doctrine, a court should not

23  reopen issues decided in earlier stages in the same litigation.")

24        **B.**    **Castro's Alleged Lack of Opportunity to be Heard in 1997 Was Cured by**
               **the Re-Validation, and No Further Remedies Are Available.**

25

26        Now that Castro has had an opportunity to be heard during the re-validation, he has no

27  other remedies, and Castro's argument that he is entitled to other relief—such as expungement of

28  his record as a gang associate—is incorrect.  (Pl.'s Opp'n 16:10–12.)  A case is moot when there

5

1    is no "effective relief" remaining that the court could provide.  *S. Or. Barter Fair v. Jackson*

2    *County*, 372 F.3d 1128, 1134 (9th Cir. 2004).  The relief available for a due-process violation

3    varies "with the private and governmental interests at stake and the circumstances of the alleged

4    deprivation."  *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003).  Courts consider procedural-

5    due-process claims independently of the substantive claim.  *Raditch v. U.S.,* 929 F.2d 478, 481

6    n.5 (9th Cir. 1990).  Thus, as the Ninth Circuit held in *Raditch* "[a] violation of procedural rights

7    requires only a procedural correction, not the reinstatement of a substantive right to which the

8    claimant may be entitled on the merits."  *Id.* at 481.

9        Castro attempts to distinguish *Raditch* by stating that the case concerned a property

10   deprivation, not a liberty deprivation.  (Pl.'s Opp'n 18:3-5.)  But *Raditch*'s statement about the

11   appropriate remedy for an alleged due-process violation did not limit itself to only property cases.

12   Rather, it made a general statement about all alleged due-process violations.

13       In any case, many decisions in this district have held that the only remedy for procedural

14   deficiencies during gang-validation and inactive-status reviews is proper due process.  *E.g.,*

15   *Garcia v. Stewart*, C 06-6735 MMC 2009 WL 688887, at *9 (N.D. Cal. Mar. 16, 2009) (inmate's

16   proper 2005 inactive-status review corrected any procedural deprivation suffered during 2004

17   inactive-status review); *Struggs v. Evans*, C 08-1495 MMC, 2008 WL 4679544, at *3 (N.D. Cal.

18   Oct. 21, 2008).

19       Inmates assigned to a term in segregated housing for serious rules violations are only

20   entitled to procedural remedies for alleged procedural violations.  *E.g.*, *Pryer v. Evans*, No. C 07-

21   4025 MMC, 2008 WL 131604 at *1 (N.D. Cal. Jan. 11, 2008) (inmate found guilty of a rules

22   violation report for battery of an inmate and assigned to a term in security housing had no other

23   remedies for his procedural due process claim after he received a second, procedurally valid

24   hearing); *Jones v. Smalls*, No. C 01-3237 MMC, 2002 WL 31618539, at *1–2 (N.D. Cal. Nov 18,

25   2002); *Myers v. Galaza*, No. C 98-1166 MJJ, 2000 WL 868519, at *1–2 (N.D. Cal. Jun 16, 2000);

26   *Montgomery v. Marshall*, No. C 92-01792 CW, 1995 WL 481620, at *3 (N.D. Cal. Aug 07,

27   1995).  Inmates alleging procedural deficiencies connected with the decision to place them in

28

1   segregated housing should not have broader remedies than inmates housed in segregated housing

2   for disciplinary reasons.

3        Even if inmates allegedly denied an opportunity to be heard during a gang validation could

4   receive non-procedural remedies, the expungement of Castro's history as a Mexican Mafia

5   associate is unwarranted.  When an inmate can only speculate that the prison's finding of

6   misconduct might affect the inmate's future confinement and possibility of parole, there are no

7   due process protections.  *Sandin v. Connor*, 515 U.S. 472, 487 (1995).  In *Sandin*, the Supreme

8   Court held that an inmate's claim that a finding of misconduct would hurt his parole chances was

9   "too attenuated to invoke the procedural guarantees of the Due Process Clause."  *Id.*

10       Castro has been re-validated, and the evidence uncovered during the last six years is more

11  than sufficient to validate him.  Additionally, prison officials discovered hidden razor blades in

12  Castro's cell in 2006 and 2009.  Razor blades are a dangerous weapon in the prison system.  *See*

13  *Walters v. McGrath*, No. C 04-0817 RMW, 2008 WL 4647379, at *6 n.3 (N.D. Cal. Oct. 20,

14  2008) (noting that prison officials determined that razor blades are deadly weapons because of

15  their capacity to cause serious or lethal injury).  Given that Castro is presently a gang associate

16  and has been found hiding a dangerous weapon as recently as four-and-a-half months ago, the

17  chance that expunging Castro's prior gang record would improve his likelihood of parole is too

18  attenuated to justify granting such relief.  *See Sandin*, 515 U.S. at 487.

19       Castro's sole claim is that he never received an opportunity to be heard.  The sufficiency of

20  the evidence is not an issue.  Castro received an opportunity to be heard during his re-validation.

21  Since Castro was given a procedural remedy, his due-process rights have been satisfied.  And

22  even if Castro's record could be expunged, it is speculative that it would lead to his parole based

23  on his present status as a Mexican Mafia associate and the weapons found in his cell in 2006 and

24  2009.

25       **C.    The Narrow "Capable of Repetition, yet Evading Review" Mootness
              Exception Does not Apply to Castro's Alleged Denial of an Opportunity to
26            be Heard in 1997.**

27       Castro claims that because he is subject to annual "gang validation hearings" and the time

28  between the hearings is inadequate to fully litigate his challenge to the hearings, this Court should

7

1   apply the "capable of repetition, yet evading review" exception to the mootness doctrine.  (Pl.'s

2   Opp. 17:20–25.)  But Castro mischaracterizes his annual classification hearings as "gang

3   validation hearings," and the exception is inapplicable because sufficient time normally exists to

4   litigate a claim concerning gang validation.

5        A claim evades review only in "exceptional circumstances."  *City of L.A. v. Lyons*, 461 U.S.

6   95, 109 (1983).  And the exception Castro cites "provides only minimal protection to individual

7   plaintiffs."  *Public Utilities Com'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1459 (9th Cir.

8   1996) (quoting *Doe v. Attorney General of the U.S.*, 941 F.2d 780, 784 (9th Cir. 1991).  A clam

9   may evade review if the "underlying action is almost certain to run its course" before a federal

10  appellate court can rule on it.  *Biodiversity Legal Found. v. Bagley*, 309 F.3d 1166, 1173 (9th Cir.

11  2002).  In deciding this question, courts consider whether they regularly rule on such claims.  *Ctr.*

12  *for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007).  And there also must be a

13  reasonable expectation that the same plaintiff will be subject to the same action again.  *Spencer v.*

14  *Kemna*, 523 U.S. 1, 17 (1998).

15       Castro's complaint challenges the procedural due process he received during the 1997

16  gang-validation.  By CDCR regulations, a gang validation is in effect for six years.  That is, once

17  an inmate is validated as a gang member or associate and placed in security housing, the inmate is

18  considered inactive only if six years pass with no further evidence of prison-gang ties.  (Cal. Code

19  Regs. tit. 15, § 3378(e); Decl. Pieren ¶ 11.)  During the six years between the initial validation

20  and inactive-status review, a classification committee annually reviews the validated inmate's

21  gang status, but these reviews are not, generally speaking, re-examinations of the gang validation.

22  *Madrid*, 889 F. Supp. at 1243.

23       Castro now appears to claim that the classification-committee hearings he previously

24  described as inadequate (Compl. 8–9) and "perfunctory" (*See, e.g.,* Kenny Decl. Ex. A, 15:17–

25  16:2, 69:6–71:5, 75:3–76:1) are full investigations of gang-validation.  Castro's annual

26  classification hearings did provide him with an opportunity to present any information relevant to

27  his gang status to the committee.  *See Medina v. Gomez*, C 93-1774 TEH, 1997 WL 488588, at *3

28  (N.D. Cal. Aug. 14, 1997) (noting that inmate received advance notice of these hearings and was

8

1   informed of his right to present any information relevant to his gang status.)  Rather, the initial

2   validation and inactive-status reviews are the relevant events for the purpose of the "evading

3   review" exception.

4        Castro also requests that this Court "view this case the way it has viewed parole hearings."

5   (Pl.'s Opp. 17:8–9.)  As Castro notes (Pl.'s Opp. 17:8–20), some courts have held that a claim

6   challenging a one-year parole denial evades review because the claim cannot be fully litigated

7   before the next parole hearing.  *See Basua v. Solis*, No. C 04-2846 MMC, 2007 WL 2470100, at

8   *4 (N.D. Cal. Aug. 27, 2007); *Lewis v. Solis*, No. No. C 04-2152 JF, 2005 WL 3454137, at

9   *3(N.D. Cal. Dec. 14, 2005).  Assuming that Castro's claim is capable of repetition, the parole-

10  hearing time limits that arguably caused the inmates' claims to evade review in *Basua* and *Solis*

11  are inapplicable here.  The Ninth Circuit docket is replete with inmate filings challenging gang-

12  validation that have been litigated.  *See, e.g., Bruce v. Ylst*, 351 f.3d 1283, 1287–88 (9th Cir.

13  2003); *Guizar v. Woodford*, 282 Fed. Appx. 551, 552 (9th Cir. 2008); *Hampton v. Ryan*, 288 Fed.

14  Appx. 404, 405 (9th Cir. 2008); *Redd v. McGrath*, 253 Fed. Appx. 642, 643–45 (9th Cir. 2007);

15  *Leon v. Terhune*, 54 Fed. Appx. 254, 255 (9th Cir. 2002).

16       And both this Court and the Ninth Circuit have twice ruled on Castro's claims in this action.

17  Castro's first inactive-status review was completed more than two years after the Ninth Circuit's

18  first ruling in this case, more than six years after he filed his complaint, and almost seven years

19  after his initial gang-validation.  (*See* Decl. Roost Ex. B at CF 0021.)  Castro's re-validation

20  occurred more than two years after the Ninth Circuit's second ruling in this case, seven and a half

21  years after the Ninth Circuit's first ruling in this case, ten and a half years after he filed his

22  Complaint, and twelve years after his initial gang-validation.  (*See* Decl. Pieren ¶ 14–15.)  Of

23  course, if Castro wanted to safeguard his day in court, he could have sought nominal damages for

24  the alleged procedural due-process violations.  *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978)

25  (nominal damages available for procedural-due-process violations).  Castro's claim has not

26  evaded review; the exception is inapplicable.

27       Castro also appears to argue that this Court should apply an exception to mootness because

28  Defendants will use CDCR procedures to moot any claim Castro could raise.  Defendants assume

9

1   that Castro's description of Defendants' alleged "eighteen year pattern of abuse and misconduct"

2   is for the purpose of showing that CDCR will moot any challenge to an inmate's gang-validation.

3   Castro's evidence consists of (Pl.'s Opp. 10:23–12:19):

- An allegedly faulty 1991 confidential memorandum;

- Castro's 1997 gang-validation;

- An allegedly improper response to a discovery request in 1999;

- Defendants' argument that Ayala was the critical decisionmaker in Castro's validation in 2005–2006;

- CDCR's inability to locate a letter, a postcard, a gang-validation folder, and a logbook sometime between 2004–2009;

- Pelican Bay's termination of Castro's mother's visitation rights in 2009;

- A cell search in 2009;

- Destruction of Castro's T.V. in 2009;

- An August 2009 call Mr. Lichtblau received from Pelican Bay informing him that his legal correspondence with Castro would be read if the return address did not identify Mr. Lichtblau as "attorney" or "esquire."

     Courts do not assume that a party "is cynically inclined to 'moot any legal challenge' the [plaintiff] may mount in the future" without evidence supporting an allegation. *Fund for Animals, Inc. v. Hogan*, 428 F.3d 1059, 1064 (D.C. Cir. 2005); *Ctr. for Biological Diversity v. Kempthorne*, C 6-07117 WHA, 2008 WL 205253, at *10 (N.D. Cal. Jan. 23, 2008). Castro has presented no evidence that Pelican Bay officials are using the CDCR's regulations concerning gang validation for any purpose other than the one intended. The dockets of the Ninth Circuit and federal district courts are replete with litigated cases brought by inmates challenging their gang validations. *See e.g.*, *Bruce*, 351 f.3d at 1287–88; *Guizar v. Woodford*, 282 Fed. Appx. at 552; *Hampton*, 288 Fed. Appx. at 405; *Redd*, 253 Fed.Appx. at 643–45; *Leon*, 54 Fed. Appx. at 255; *Ashker v. Schwarzenegger*, No. C 05-03286 CW, 2009 WL 801557, at *1 (N.D. Cal. March 25, 2009); *Garcia v. Stewart*, No. C 06-6735 MMC, 2009 WL 688887, at *6–10 (N.D. Cal. March 16, 2009); *Lopez v. Cook*, No. C 03-1605 GEB, 2009 WL 111723, at *1 (E.D. Cal. Jan. 16, 2009).

10

1    Because Castro's due-process claim would not normally—and in this case has not—run its course

2    before a federal appellate court can rule on it, and because there is no evidence that prison

3    officials will prevent Castro from having his day in court, this case is now moot.

4    **III.    EVIDENCE RELIED ON FOR CASTRO'S INACTIVE-STATUS REVIEWS, NOT THE 1997**
     **VALIDATION, FORMED THE BASIS FOR CASTRO'S SEGREGATION IN SECURITY**
5    **HOUSING BEFORE HIS RE-VALIDATION.**

6        Castro claims that because CDCR regulations require three pieces of evidence before an

7    inmate is *placed* in segregated housing, while an inmate may be *retained* in segregated housing

8    after his inactive status review based on one piece of evidence, Castro's inactive status reviews do

9    not moot this case. (Pl.'s Opp'n 13:3–10.) But substantive due process does not require three

10   pieces of evidence supporting Castro's placement or retention in segregated housing; it only

11   requires "some evidence."

12       When an inmate alleges a constitutional deprivation, but there is no longer an actual injury

13   traceable to the defendants that is likely to be redressed by a favorable judicial decision, the claim

14   is moot. *Burnett v. Camport*, 432 F.3d 996, 999–1001 (9th Cir. 2005). In *Burnett*, the inmate

15   filed a habeas suit against the parole board alleging unlawful parole denial, but by the time the

16   district court ruled on his claim, he had already been released, re-offended, and was serving a new

17   prison term. *Id.* at 997. Ninth Circuit ruled that the inmate's subsequent parole and re-

18   imprisonment rendered his petition concerning an allegedly unlawful parole denial moot. *Id.* at

19   1001. Similarly, Castro's inactive-status reviews render Castro's alleged lack of opportunity to

20   be heard during the 1997 gang-validation moot because the 1997 validation no longer connects to

21   a deprivation invoking constitutional protections.

22       Substantive due process only requires that individuals segregating an inmate show that

23   "some evidence" supports the decision. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1104 (9th Cir.

24   1986). This determination does not require examination of the entire record, independent

25   assessment of the credibility of witnesses, or weighing of the evidence. *Id.* at 1105. Instead, the

26   relevant question is whether there is any evidence in the record that could support the conclusion

27   reached. *Id.* Here, this Court ruled that "any of the three pieces of evidence in the record was

28

11

Defs.' Reply to Pl.'s Opp. to Mots. Dismiss & Summ. J.  (C 98-4877 WHA (PR))

1    sufficient to support the decision to validate plaintiff as a gang associate." (Docket No. 31 at

2    8:12–14.)

3         Validated inmates who evidence no prison-gang ties for at least six years are considered

4    inactive. (Cal. Code Regs. tit. 15, § 3378(e); Decl. Pieren ¶ 11.) Castro received two inactive-

5    status reviews following his 1997 validation. (Decl. Roost Ex. B at CF 0006, 0014, 0022, 2142–

6    2143.) In both instances, new evidence forged the basis of classifying Castro as an active prison-

7    gang participant. Because the 1997 gang-validation did not cause Castro's retention in security

8    housing since his inactive-status reviews, his claim is now moot.

9    **IV.    DEFENDANTS MAY RELY ON EVIDENCE OF THE RE-VALIDATION AND THE
         INACTIVE STATUS REVIEWS TO SHOW THAT THIS CASE IS NOW MOOT.**

10

11        Castro argues that Defendants should be precluded from relying on the evidence from

12   Castro's re-validation and inactive-status reviews because Defendants did not disclose this

13   evidence during discovery and objected to Castro's request for post-1997 gang investigation

14   training materials. (Pl.'s Opp. 13:22–14:18.) The implication is that the lack of disclosure would

15   defeat mootness. But the re-validation had not yet occurred when Defendants responded to

16   discovery, the documents relating to the inactive-status reviews were contained in Castro's central

17   file (which was provided to Castro and referenced in Defendants' initial disclosures) (Decl.

18   Lichtblau Supp. Opp'n Defs.' Mots. Dismiss & Summ. J. Ex. B.), and the post-1997 gang

19   investigation training materials were not used in support of Defendants' motion.

20        If a party fails to provide information or identify a witness in its initial disclosures, the party

21   is not allowed to later use that information or witness to support a motion, "unless the failure was

22   substantially justified or is harmless." Fed. R. Civ. P. 37. Here, the only new evidence not

23   provided in the initial disclosures are the pieces of evidence used to re-validate Castro. The only

24   new witnesses were Pieren and Kissel, and their declarations specifically addressed Castro's re-

25   validation. (*See* Decl. Kissel Supp. Defs.' Mots. Dismiss & Summ. J.; Decl. Pieren.) These

26   could not have been known to Defendants before the re-validation. Defendants already disclosed

27   and produced the pieces of evidence used in Castro's 1997 gang-validation. The inactive-status

28   review documents are referenced in Defendants' motion for summary judgment to show that he is

                                            12

1    presently retained in security housing because of the inactive-status reviews, not his 1997 gang-

2    validation.  They are contained in Castro's central file and equally available to Castro.

3           Because the only new information and witnesses used to support Defendants' motion are

4    related to Castro's re-validation, the inactive-status review documents are in Castro's central file,

5    and Defendants did not use post-1997 gang investigation training materials, this Court should not

6    preclude Defendants from using evidence of the re-validation and the inactive-status reviews to

7    show that this case is moot.

8    **V.     AYALA AND GONZALES ARE THE ONLY PROPER DEFENDANTS IN THIS ACTION.**

9           Castro argues that the Defendants other than Ayala and Gonzales should remain in this

10   action because only they can restore Castro's classification status, clear his prison record, and

11   restore good-time credits.  (Plf.'s Opp. 18:22–28.)  But it is not enough that the other Defendants

12   could give Castro the relief he wants; there must be claims against them.

13          The only remaining issues left in the case are: (1) whether Defendant Ayala was the critical

14   decisionmaker; and (2) whether Castro had a chance to express his views on validation to him.

15   (Docket No. 79.)

16          Because Ayala and Gonzales were the validating gang investigators who were supposed to

17   provide the opportunity to be heard that Castro allegedly never received, and only Ayala and

18   Gonzales prepared and signed Castro's validation package, only Ayala and Gonzales should

19   remain as defendants.  This Court should dismiss the rest.  *See Taylor v. List*, 880 F.2d 1040,

20   1045 (9th Cir. 1989) (liability under § 1983 requires a defendant's personal participation in the

21   alleged violation); *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff

22   must allege facts, not simply conclusions, that show that an individual was personally involved in

23   the deprivation of his civil rights.") (internal quotation marks omitted).

24   ///

25   ///

26   ///

27   ///

28   ///

13

1    **VI.   THIS CASE MUST BE DISMISSED BECAUSE CASTRO DID NOT EXHAUST
2          ADMINISTRATIVE REMEDIES CONCERNING HIS OPPORTUNITY TO BE HEARD BY A
          GANG INVESTIGATOR.**

3          **A.   Castro Did Not Alert the Prison to the Nature of the Wrong for Which He
                 Sought Redress.**
4

5          Castro exhausted an administrative grievance before filing this suit, but the grievance did

6    not concern his claim that he had no opportunity to be heard by the gang investigator before his

7    validation.  Rather, the grievance argued that Castro did not get to review the evidence supporting

8    the validation.  Castro rejoins that inmates do not have to use "magic words" to exhaust

9    administrative remedies.  (Pl.'s Opp'n 2.)  Although there is nothing magical about it, Castro

10   must have used sufficient language to notify prison staff of the wrong for which he sought

11   redress—and he did not.

12         The Ninth Circuit recently addressed the level of specificity required in an inmate grievance

13   for proper exhaustion in *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009).  Adopting the Seventh

14   Circuit's approach, the court in *Griffin* held that "when a prison's grievance procedures are silent

15   or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of

16   the wrong for which redress is sought."  *Griffin*, 557 F.3d at 1120 (quoting *Strong v. David*, 297

17   F.3d 646, 650 (7th Cir. 2002)).[1]   The Ninth Circuit determined that this standard advances the

18   primary purpose of a grievance:  to alert the prison of a problem and facilitate its resolution.  *Id.*

19         In *Griffin*, inmate Griffin submitted a grievance requesting better means of accessing his

20   top bunk.  *Id.* at 1119.  At every level of appeal, reviewers responded to Griffin that he had an

21   assignment for a lower bunk, which resolves the issue.  *Id.*  Although Griffin's actual problem

22   was that his lower-bunk assignment was being disregarded by prison staff, he continued to

23   demand better means of accessing the top bunk.  *Id.*  The court held that Griffin failed to properly

24   exhaust his grievance because he did not provide notice of disregard to his lower-bunk

25   assignment.  *Id.* at 1121.

26   _____

27         [1] The California prison regulation governing inmate grievances is worded similarly to the
     Arizona regulation at issue in *Griffin*.  *Compare* Cal. Code Regs. tit. 15, § 3084.2(a) with *Griffin*,
28   557 F.3d at 1120.

1          Similarly here, Castro failed to properly exhaust his grievance because he did not provide

2    notice that he allegedly had no opportunity to be heard by a gang investigator.  Rather, Castro

3    submitted a grievance challenging a classification-committee hearing approving his temporary

4    administrative-segregation placement pending investigation into his gang involvement.  (Compl.

5    Ex. A at 1.)  Castro argued that he was not given any evidence of his prison-gang participation at

6    the hearing.  Thus, the first-level response advised Castro that he would receive this evidence.

7    (Compl. Ex. A at 3.)  Castro then appealed to the second level, saying, "My request for

8    documents is not for the sake of having them, but rather as a means of obtaining a fair hearing

9    under CCR 3338(f)–(h)."  (Decl. Roost Ex. B at CF 1205.)  California Code of Regulations

10   section 3338(f)–(h) discusses standards for an inmate's initial classification-committee hearing on

11   administrative-segregation placement, occurring within ten days of this placement, to determine

12   need for continued retention pending criminal, disciplinary, or nondisciplinary issues; the section

13   does not address gang validations, gang-investigator responsibilities, or an inmate's due process

14   relating to validation.  Cal. Code Regs. tit. 15, § 3338(a), (d).  The second-level response added

15   that Castro already had evidence linking him to the Mexican Mafia prison gang from his prior

16   validation.  (Compl. Ex. A at 6.)  Castro then appealed to the third level, saying his due-process

17   rights were violated because he was not given evidence of his gang validation.  (Compl. Ex. A at

18   7.)  The third-level response unsurprisingly pointed out what previous responses did:  that he

19   received this evidence.  (Compl. Ex. A at 8.)

20          Castro also kept the focus of his inmate appeal on his classification-committee hearing

21   concerning initial placement in administrative segregation pending the validation proceedings,

22   rather than his actual validation.  (Compl. Ex. A at 9.)  Although Castro has subsequently kept

23   this litigation alive by asserting under oath that no gang investigator was present at this

24   classification-committee hearing (*see* Decl. Castro Supp. Opp'n Defs.' Supplemental Br., Dec. 10,

25   2002), Castro never wrote in a grievance that he had no chance to talk to a gang investigator, and

26   he never requested in his grievance that he receive an opportunity to be heard by a gang

27   investigator.  Castro's failure to articulate that he had no chance to share his views on validation

28

15

1   with a gang investigator is like Griffin's failure to articulate anything concerning the disregard of

2   his lower-bunk assignment:  neither inmate put prison officials on notice of the actual problem.

3          A purpose of the exhaustion requirement is to "afford corrections officials time and

4   opportunity to address complaints internally before allowing the initiation of a federal case," and

5   to possibly "satisfy the inmate, thereby obviating the need for litigation."  *Porter v. Nussle*, 534

6   U.S. 516, 525 (2002).  Had Castro alerted prison officials that he had not received a chance to

7   speak with a gang investigator concerning his validation, his grievance's responses would have

8   likely furnished or documented such opportunities (as was done concerning the evidence issue

9   that Castro actually raised).  And had the prison received the opportunity to correct the alleged

10  violation, this whole suit could have been avoided.  For suits that do end up in court, exhaustion

11  tends to improve their quality by creating an administrative record that is helpful to the court.

12  *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006).  Rather than this Court being left with decade-old

13  memories concerning the opportunity to be heard, it could have had documented information

14  about any opportunity Castro received.

15         In sum, the law requires that this case be dismissed because Castro did not properly exhaust

16  his administrative remedies, and the policy behind the law shows why dismissal is necessary:

17  proper exhaustion would have addressed and likely resolved any controversy now burdening

18  Defendants and the Court.

19         **B.     Defendants Did Not Waive the Nonexhaustion Defense.**

20         Defendants have not waived their affirmative defense that Castro failed to properly exhaust

21  his administrative remedies.  Like the habeas petitioner in *Morrison v. Mahoney*, 399 F.3d 1042,

22  1045 (9th Cir. 2005), Castro seems to argue that Defendants impliedly waived their affirmative

23  nonexhaustion defense by failing to raise it in a timely manner (Pl.'s Opp'n Defs.' Mot. Dismiss

24  6).  As the Ninth Circuit in *Morrison* observed, defendants can raise a new defense on remand

25  when, as here, they prevailed previously through motions.  *Id.* at 1046.

26         Defendants' previous success through summary-judgment motions under Federal Rule of

27  Civil Procedure 56 does not foreclose their ability to file the instant motion.  First, Rule 12's

28  waiver provision applies only to certain enumerated defenses, Fed. R. Civ. P. 12(h)(1), and failure

16

to exhaust administrative remedies in compliance with the Prison Litigation Reform Act is not an

enumerated defense under Rule 12(b), *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

Second, even if lack of exhaustion were an enumerated 12(b) defense, Defendants would not have

waived it because they have not yet pleaded. "Under the Federal Rules of Civil Procedure, a

party, with limited exceptions, is required to raise every defense in its first responsive pleading,

and defenses not so raised are deemed waived." *Morrison*, 399 F.3d at 1046. The Ninth Circuit

in *Morrison* noted that the Federal Rules of Civil Procedure define "pleadings" as a complaint

and answer; "[a]nything else is a motion or paper." *Morrison*, 399 F.3d at 1046. Thus, before an

answer is filed, and "[u]nless a court has ordered otherwise, separate motions to dismiss may be

filed asserting different affirmative defenses." *Id.*

As Castro points out, Defendants never filed an answer in this case. (Pl.'s Opp'n Defs.'

Mot. Dismiss 6.) Indeed, the Court has never ordered an answer, Castro has never moved for

default judgment because of any failure to answer, and Defendants have waived their right to

answer inmate Castro's complaint (Defs.' Waiver Reply). A defendant may waive the right to

reply to an action filed by a prisoner under federal law. 42 U.S.C. § 1997e(g)(1). Given that

Defendants have not pleaded by filing an answer, waiver is absent here.

Castro provides no case law or statute to show that Defendants have waived the

nonexhaustion defense. For instance, Castro cites to *Randolph v. Rogers*, 253 F.3d 342, 348 n.11

(8th Cir. 2001) to explain that the defense of nonexhaustion is waived on appeal if not raised in

district court. (Pl.'s Opp'n Defs.' Mot. Dismiss 6.) But here we are before the district court, and

Defendants are raising the defense of nonexhaustion before filing their first responsive pleading.

Finally, the Court addressed the waiver-of-exhaustion argument recently in *Redd v. Daley*,

No. C 98-20429 JF (HRL) WL 2941527 (N.D. Cal. Sept. 10, 2009). The Court observed "some

tension between the notion that a defendant may waive the exhaustion requirement and language

in recent Supreme Court decisions indicating that exhaustion is mandatory, and that all agree that

no unexhausted claim may be considered." *Id.* at *3. The Court concluded, in an analogous

situation to here, that even if a defendant could waive the defense, it had not been waived

because—through an unclear procedural anomaly—the defendant had not filed an answer. *Id.*

17

1   And because the defendant had filed a Rule 12(b) motion, no answer was required at the time.

2   *Id.*; *see also* Fed. Rule Civ. P. 12(a)(4) (filing a 12(b) motion alters the time to serve a responsive

3   pleading).  The court concluded that "even when a defendant fails to plead an affirmative defense

4   as required under Rule 12, the defendant may raise such defense late in the litigation—even at the

5   summary judgment state—if the plaintiff is not prejudiced."  *Id.* at *4.  Here, Castro addressed the

6   question of prejudice in one line, hollowly asserting that "Castro would be extremely prejudiced

7   were the Court to accept Defendants' defense now."  Were Castro to explain what prejudice he

8   might suffer, Defendants would rejoin the reasoning.  For instance, his alleged prejudice is not

9   financial.  Castro currently enjoys pro-bono counsel, and previously was protected from litigation

10   expenses through his in-forma-pauperis status.

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2    Defendants' motion must be granted because Castro has already received all that he would

3    receive if he prevailed at trial:  an opportunity to be heard on the evidence used to validate him in

4    1997.  The re-validation occurred twelve years after the 1997 validation, after two judgments

5    from this Court and two appeals to the Ninth Circuit.  Castro's claim has not evaded review.

6    Because he has no other remedies, the Court no longer has jurisdiction.  Defendants' motion must

7    be granted because Castro is no longer held in security housing because of his 1997 gang-

8    validation.  He is held there—not only for possessing dangerous weapons—but because

9    subsequent inactive-reviews have found evidence of his continuing gang activity.  Finally,

10    Defendants' motion must be granted because Castro's administrative grievance challenging his

11    initial administrative segregation placement did not put prison officials on notice of his due-

12    process claim in this case, and Defendants can now raise this defense because they have never

13    waived it.

14

Dated:  September 24, 2009                          Respectfully Submitted,

15

16                                                   EDMUND G. BROWN JR.
                                                     Attorney General of California
17                                                   THOMAS S. PATTERSON
                                                     Supervising Deputy Attorney General

18                                                   */s/ Brendan M. Kenny*

19
                                                     BRENDAN M. KENNY
20                                                   Deputy Attorney General
                                                     *Attorneys for Defendants Ayers, Terhune,*
21                                                   *Ayala, Jordan, Martinez, Derusha,*
                                                     *Batchelor, Yarborough, Hood, Scribner,*
22                                                   *Campbell, Stokes, and Gonzales*

23    CF1999CX0023
      20223060.doc

24

25

26

27

28

Defs.' Reply to Pl.'s Opp. to Mots. Dismiss & Summ. J.  (C 98-4877 WHA (PR))