IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS CASTRO,

    Plaintiff,

  v.

CAL TERHUNE, ROBERT L. AYERS, JR., G. BONNIE GARIBAY, M. YARBOROUGH, A. SCRIBNER, L. HOOD, J. STOKES, C. CAMPBELL, A. M. GONZALES, M. AYALA, S. C. WOLHWEND, A. JORDAN, J. MARTINEZ, J. BATCHELOR, and E. DERUSHA,

    Defendants.

No. C 98-04877 WHA

**TENTATIVE ORDER TO CONDUCT NEW VALIDATION PROCEDURE**

    This is a tentative order and is subject to discussion at the further case management conference on October 28, 2010. A final order will be issued thereafter.

\*      \*      \*

    After a trial held that plaintiff Carlos Castro was denied procedural due process when he was found by defendants to be a prison gang associate, this order must determine the proper remedial procedure for a new validation of plaintiff, to be conducted by defendants.

    Defendants tried to head off any remedy by voluntarily providing plaintiff with a new validation proceeding in 2009 but that proceeding, in retrospect, proved to be problematic and possibly tainted by machinations of counsel. The order denying defendants' motion for summary judgment concerning the 2009 validation stated in part: "If defendants do not wish to have a trial on the fairness of the 2009 validation, then . . . counsel and the Court will work out a protocol to

1  ensure that the next validation will be fair and comport with due process" (Dkt. No. 368).
2  Defense counsel filed a response to this proposal. They said they would be willing to forgo trial
3  if three conditions were met: (1) briefing was allowed on the procedure for revalidation,
4  (2) discovery was stayed, and (3) plaintiff agreed to forgo attorney's fees (Dkt. No. 370).
5  Briefing was allowed and discovery was stayed. (This was not because defense counsel named
6  them as conditions; rather, they are consistent with a process of crafting a new validation
7  procedure.) The parties appeared at a further case management conference on October 28, 2010.

8  Defense counsel continue to argue for their third condition: no attorney's fees for plaintiff.
9  Defense counsel have not agreed to forgo trial absent an agreement from plaintiff to forgo fees or
10 absent a "tentative deci[sion by the Court] what attorney's fees and costs Castro's counsel are
11 entitled to" (Br. 8). Defense counsel argue that this order should make this "tentative decision"
12 even though there is no evidence of the fees or costs incurred by plaintiff or any pending motion
13 by plaintiff for such fees or costs.

14 This order need not determine what fees or costs are due plaintiff without any basis on
15 which to do so and without any pending motion. Determining fees and costs is not a necessary
16 prerequisite to ordering a new validation. We can take up the attorney's fees issue when it is ripe.

17 This order must instead determine the remedial procedure for a new validation. The
18 federal procedural due process violation was detailed in the findings of fact and conclusions of
19 law that followed a bench trial concerning the 1997 validation of plaintiff as a Mexican Mafia
20 associate (Dkt. No. 237). A new validation is needed to remedy the 1997 violation if state prison
21 authorities desire plaintiff to stay in the secured housing unit, which they do. A new validation is
22 needed because it is the only way to provide plaintiff with procedural due process. The proper
23 remedy for a procedural due process violation is "a procedural correction" — *i.e.*, further process.
24 *See Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991); *see also, e.g.*, *Stewart v.*
25 *Alameida*, 418 F. Supp. 2d 1154, 1166–67 (N.D. Cal. 2006).

26 True, defense counsel's briefing on this point — that a proper remedy for a procedural due
27 process violation is a procedural correction — is a repeat of a portion of defendants' briefing on a
28 motion lost by defendants. But it was not denied on this point. Courts in this circuit have

consistently applied *Raditch* in the context of challenges to deprivation of liberty interests without procedural due process. A validation hearing that complies with due process is needed to remedy the 1997 violation. *Raditch*, 929 F.2d at 481.

Plaintiff's counsel argue that "[a]ny full remedy must [] address whether [plaintiff] was in a prison gang in 1997 and, upon a finding that he was not, remedy ongoing harm that resulted from his wrongful validation" (Reply 4). They cite nothing in support and this assertion is contrary to law. In fact, it is confusing. It is not clear what counsel are really saying, in this passage, is needed to remedy the procedural due process violation in 1997. They otherwise generally state that "Defendants are incapable of providing Plaintiff with due process of law" (Reply 5). Just because prison authorities did not provide due process in 1997 does not mean they are incapable of doing so. Widespread changes need not be imposed to comprehensive state and CDCR regulations concerning validations in order to provide a remedy to plaintiff.

This order holds that the new agency validation shall follow state and CDCR regulations. Derailing these regulations for this case would not be the remedy that is least intrusive into state affairs, as is required by the PLRA. 18 U.S.C. 3626(a)(1)(A); *see also Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2000) ("the nature of the violation determines the scope of the remedy") (citation omitted). This order need not review the specifics of that procedure because it is laid out in the regulations. *See* Cal. Admin. Code tit. 15, § 3378.

This order does, however, need to specify certain restrictions about the individuals involved in the revalidation. In order to ensure that procedural due process is provided without any danger of a predetermined outcome, Assistant IGI Short and defense counsel shall not be involved in the revalidation. Other Assistant IGIs can assist the IGI if necessary.

Furthermore, while the validation process is pending there shall be no communication between defense counsel directly or indirectly on any topic with anyone in the prison system regarding anything having to do with prison gang validations.[1] For example, there will be no checking with defense counsel by prison authorities to see if the validation package passes

---

[1] If litigation counsel have other cases pending with the CDCR concerning prison gang validations that will be prejudiced because of this provision then the Court will modify this order as appropriate.

3

muster. Defense counsel shall make sure this prohibition is understood by prison authorities *before* revalidation begins, so that there is no danger that they send anything to defense counsel in violation of this order. These steps are necessary to ensure that procedural due process is met, keeping in mind the appearance of impropriety concerning the 2009 validation discussed in the order denying summary judgment.

All participants must be warned in plain terms that they must follow the rules, be unbiased, fairly weigh the evidence, and reach just conclusions. The decision-maker must state in writing each and every finding and state why each item of evidence does or does not show gang association. The decision-maker must fairly state plaintiff's response to each item and the decision-maker's evaluation of those responses. A recording must be made of the interview with plaintiff.

After the process is done the decision-maker and all individuals involved in the process must file declarations with the Court that set forth the full process followed and identify and describe any communications that they had with *anyone* on the subject of Carlos Castro since June 30, 2010, other than communications appearing in the administrative record and communications with Carlos Castro. That means identifying the person they communicated with, the date, the subject matter, and a short description of the communications. It means all CDCR and prison officers involved in the validation process must keep a log of all communications going forward and from memory or their files reconstructing past communications. The declarations must then verify that the IGI and assistant IGI or anyone else who assisted in the process has no bias against Mr. Castro and made decisions solely on the merits.

In order to implement this requirement defense counsel must advise appropriate persons at the CDCR that this requirement will be necessary and that they must maintain the appropriate log of communications. Defense counsel are instructed to communicate with the CDCR and their clients to advise them of this ruling and to remove in advance any obstacle to the faithful and full implementation of this remedial order. In doing so, however, counsel must not in any way try to steer the outcome of the validation proceeding. Once defense counsel have advised the CDCR of this order and removed any obstacles then counsel must stay clear of the process until it is

4

1  complete. The CDCR shall advise counsel of the final administrative decision at which point
2  counsel shall advise the Court of the decision and move to terminate this action. That motion
3  must be accompanied by the required declarations establishing full and fair compliance with this
4  remedial order. Defense counsel must file declarations at the end verifying their compliance with
5  this order.

6  This order finds that this relief is narrowly drawn, extends no further than necessary to
7  correct the violation of plaintiff's federal rights, and is the least intrusive means necessary to
8  correct the violation of those rights. 18 U.S.C. 3626(b)(2).

9  Plaintiff argues that more is needed and that this order must diverge significantly from the
10 CDCR regulations for relief to be appropriate. Notably, plaintiff's counsel cite no law in support.
11 Each of plaintiff's requests must be addressed in turn so it is clear why they are all inappropriate
12 modifications to existing CDCR regulations.

13 **Request No. 1: The critical decision-maker should come from outside the CDCR**

14 Plaintiff argues that this is necessary because "the [CDCR] cannot be trusted to give Mr.
15 Castro a fair hearing" (Br. 5; *see also* Reply 3 ("no matter what Plaintiff does, no matter what the
16 Court does, and no matter what the law says, [defendants] will see to it that Plaintiff spends the
17 rest of his life in the SHU")). Plaintiff's counsel paint a picture of an entire prison administration
18 on a mission to get their client. This is an improper characterization of not only the record in this
19 case, but also the standard for determining relief to cure a procedural due process violation. This
20 order must fashion relief targeted at the specific violation. Plaintiff's recommended course would
21 supplant a central feature of state regulation: the decision-maker in validation proceedings. This
22 would intrude on state authority to create its own regulations. To the extent plaintiff has
23 expressed concerns about the motives of *specific* individuals being involved in the revalidation,
24 this order precludes their involvement in the manner described above. That is the only way to
25 narrowly tailor relief as required.

26 **Request No. 2: The Court must adopt its own definition of the term prison gang "associate"**

27 As plaintiff acknowledges, CDCR regulations *define prison gang associate*. Cal. Admin.
28 Code tit. 15, § 3378(c)(4) ("An associate is an inmate/parolee who is involved periodically or

5

1 regularly with members or associates of a gang."). Yet plaintiff's counsel continue to argue that
2 "before Plaintiff can possibly receive a meaningful opportunity to be heard, clear definition must
3 be provided" to the terms of this definition because they would otherwise "lend themselves to
4 arbitrary and capricious decision-making." There are several things wrong with this request.
5 *First*, it is overbroad. It would require having a whole proceeding about the meaning of the word
6 "associate." It would intrude on the state's authority to create its own regulations. It would not
7 be specific to the federal violation. *Second*, a further definition of the term would not do much to
8 further a meaningful response in the validation process because such responses would be targeted
9 to the source items used as evidence of plaintiff's prison gang association. The response would
10 be specific, based on items of evidence, rather than geared toward a general definition as this
11 request implies.[2]

**Request No. 3: Plaintiff must be afforded a right to see evidence in advance of his "hearing"**

This request is redundant to what is already provided in CDCR regulations. *See* Cal. Admin. Code tit. 15, § 3378(c)(6)(C).

**Request No. 4: Counsel must "present Mr. Castro's defense"**

Plaintiff argues that counsel must be involved in the revalidation procedure because the requested "neutral decision-maker" will not be "intimately familiar with CDCR policies and procedures" (Br. 7). It is not clear what specific involvement by counsel is being requested and how it would impact the validation procedure provided in CDCR regulations. But because there will not be a critical decision-maker from outside of the CDCR — which is the predicate to this request — this request is moot.

**Request No. 5: "Right to discovery"**

Plaintiff's counsel state they have a right to discovery during the validation procedure to determine what prison authorities are "not includ[ing] in the 'validation package'" (Br. 7). This request does not specify in any way what the scope of such discovery would be. As such, it

---

[2] Plaintiff's counsel tack on an argument in reply that the "loose requirements for 'source items'" also "subject the entire process to the arbitrary whims of the decisionmaker" (Reply 6). Yet this term is also defined by CDCR regulations. Cal. Admin. Code tit. 15, § 3378(c)(8).

6

1 cannot be implemented. Moreover, plaintiff is not entitled to a formal judicial hearing or the full
2 range of due process protections. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

**Request No. 6: The Court should retain jurisdiction**

Plaintiff's counsel argue that the Court should retain jurisdiction to ensure that the revalidation complies with due process. "[F]ederal court intervention in state institutions is a temporary measure and may extend no longer than necessary to cure constitutional violations." *Labor/Cmty. Strategy Ctr. v. Los Angeles County Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009). Yet this Court must retain jurisdiction long enough to know whether the remedy is carried out — *i.e.*, until such time as prison authorities conduct the validation procedure and determine that plaintiff is or is not a prison gang associate. Once the Court finds that the original wrong has been sufficiently righted, then this file will be closed.

At the end of plaintiff's reply brief, his counsel assert that — even if we forgo trial — this order should allow them to complete discovery and the Court should make findings regarding spoliation of evidence. It is unclear why. Discovery concerned potential spoliation of evidence that might have been relevant to the 2009 validation. This new procedure provides a remedy to the 1997 procedural due process violation, so discovery as to the 2009 validation is moot.

Defense counsel must file a status report when the foregoing validation procedure has begun, but no later than **NOVEMBER 18, 2010**, including the projected date of the interview with Castro required by the validation regulations. *See* Cal. Admin. Code tit. 15, § 3378(c)(6). Defense counsel must also file the declarations and motion described above when the validation procedure is complete. Nevertheless, this order sets a further case management conference for **MARCH 3, 2011, AT 11:00 A.M.**

Dated: October 26, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7