United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS CASTRO,

    Plaintiff,

  v.

CAL TERHUNE, ROBERT L. AYERS, JR., G. BONNIE GARIBAY, M. YARBOROUGH, A. SCRIBNER, L. HOOD, J. STOKES, C. CAMPBELL, A. M. GONZALES, M. AYALA, S. C. WOLHWEND, A. JORDAN, J. MARTINEZ, J. BATCHELOR, and E. DERUSHA,

    Defendants.

No. C 98-04877 WHA

**REMEDIAL ORDER TO CONDUCT NEW VALIDATION PROCEDURE**

After a 2009 bench trial, plaintiff Carlos Castro was found to have been denied procedural due process by defendants in their validation of him as a prison gang associate. This order must determine the proper remedial procedure for a new validation of plaintiff.

Defendants tried to moot the entire action by voluntarily providing plaintiff with a new validation proceeding shortly before the bench trial. That validation proceeding, in retrospect, proved to be problematic and possibly tainted by machinations of counsel.

After briefing and a hearing, this order now establishes the remedial procedure for a new validation. The procedural due process violation was detailed in the findings of fact and conclusions of law (Dkt. No. 237). A new validation is needed because it is the only way to provide plaintiff with procedural due process. The proper remedy for a procedural due process violation is "a procedural correction" — *i.e.*, further process. *See Raditch v. United States*, 929

F.2d 478, 481 (9th Cir. 1991); *see also, e.g.*, *Stewart v. Alameida*, 418 F. Supp. 2d 1154, 1166–67 (N.D. Cal. 2006).

The remedial proceeding shall follow state and CDCR regulations except as stated below. The remedy should be the least intrusive into the state interest, as is required by the PLRA. 18 U.S.C. 3626(a)(1)(A); *see also Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2000) ("the nature of the violation determines the scope of the remedy") (citation omitted). This order need not review the specifics of that procedure because it is laid out in the regulations. *See* Cal. Admin. Code tit. 15, § 3378.

This validation procedure will evaluate whether plaintiff is a gang associate *now*, not in 1997 or 2009 (or any other time). Both sides stipulate to this aspect. This does not mean that earlier evidence is inadmissible in the new validation process.

The following deviations from the regulations shall apply:

1. Each side may have one lawyer present at the validation interview and plaintiff's counsel may use discovery obtained herein to challenge the reliability of various source items at the interview. If required for confidentiality, plaintiff himself must be excused from the interview room while restricted material is discussed.

2. Counsel and plaintiff shall be given at least 72 hours notice of the source items to be used against plaintiff and of the time and place of the interview.

3. While the validation process is pending, except for attendance and advocacy at the interview, there shall be no communication between Deputy Attorney Generals Ken Roost and Brendan Kenny, on the one hand, and anyone in the prison system, on the other, directly or indirectly regarding prison gang validations. For example, there will be no checking with defense counsel by prison authorities to see if the Carlos Castro validation package passes muster. As to Attorney Tom Patterson, as discussed at the hearing, there shall be no communication between him directly or indirectly with anyone in the prison system regarding Carlos Castro; *and* there shall be no communication between him and anyone in the prison system *directly* regarding anything having to do with prison gang validations. The difference for Attorney Patterson follows from the fact that he is a

2

Supervising Deputy Attorney General and thus has other cases that might be prejudiced by a broader prohibition. Plaintiff's counsel had no objection to this provision.

4. Assistant IGI Short shall not be involved in the revalidation. Other Assistant IGIs can assist the IGI if necessary. The IGI/decision-maker must be someone who has not previously acted in the matter but he can be from within the CDCR.

5. All participants must be warned in plain terms that they must follow the rules, be unbiased, fairly weigh the evidence, and reach just conclusions.

6. The decision-maker must state in writing each and every finding and state why each item of evidence does or does not show gang association. The decision-maker must fairly state plaintiff's response to each item and the decision-maker's evaluation of those responses.

7. A recording must be made of the interview with plaintiff and kept for use in court.

8. After the process is done, the decision-maker and all individuals involved in the process must file declarations with the Court that set forth the full process followed and identify and describe any communications that they had with *anyone* on the subject of Carlos Castro since June 30, 2010, other than communications appearing in the administrative record and communications with Carlos Castro. That means identifying the person they communicated with, the date, the subject matter, and a short description of the communications. It means all CDCR and prison officers involved in the validation process must keep a log of all communications going forward and from memory or their files reconstructing past communications. The declarations must then verify that the IGI and assistant IGI or anyone else who assisted in the process has no bias against Mr. Castro and made decisions solely on the merits.

9. In order to implement this requirement defense counsel must advise appropriate persons at the CDCR that this requirement will be necessary and that they must maintain the appropriate log of communications. Defense counsel are instructed to communicate with the CDCR and their clients to advise them of this ruling and to remove in advance any obstacle to the faithful and full implementation of this remedial order. In doing so,

3

however, counsel must not in any way try to steer the outcome of the validation proceeding. Once defense counsel have advised the CDCR of this order and removed any obstacles then counsel must stay clear of the process until it is complete (except for attendance and advocacy at the interview).

10. The CDCR shall advise counsel of the final administrative decision at which point counsel shall advise the Court of the decision and move to terminate this action. That motion must be accompanied by the required declarations establishing full and fair compliance with this remedial order. Defense counsel must file declarations at the end verifying their compliance with this order. Plaintiff's counsel may oppose the motion.

11. Any finding by the decision-maker that plaintiff is a prison gang "associate" must state the definition used of "associate" and specify with particularity the reasoning for finding him to meet the definition used.

This order finds that this relief is narrowly drawn, extends no further than necessary to correct the violation of plaintiff's federal rights, and is the least intrusive means necessary to correct the violation of those rights. 18 U.S.C. 3626(b)(2).

Plaintiff argues that more is needed and that this order must diverge significantly from the CDCR regulations for relief to be appropriate. More specifically, plaintiff's counsel request discovery during the validation procedure to determine what prison authorities are "not includ[ing] in the 'validation package'" (Br. 7). Plaintiff is not entitled to a formal judicial hearing or the full range of due process protections. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Plaintiff is not entitled to discovery during the new validation process. But any discovery material already turned over to plaintiff's counsel (much has been) can be used at the interview, and if the source item is confidential then plaintiff can be excused from the room temporarily so that the underlying source item can be discussed without violating state regulations or the protective order in this action.

Next, plaintiff argues that the critical decision-maker in the new validation should come from outside the CDCR, because "the [CDCR] cannot be trusted to give Mr. Castro a fair hearing" (Br. 5; *see also* Reply 3 ("no matter what Plaintiff does, no matter what the Court does,

4

1    and no matter what the law says, [defendants] will see to it that Plaintiff spends the rest of his life
2    in the SHU")). Counsel paint a picture of an entire prison administration on a mission to get their
3    client. This order, however, must fashion relief targeted at the specific violation. Plaintiff's
4    recommended course would supplant a central feature of state regulation: the decision-maker in
5    validation proceedings. This would intrude on state authority to create its own regulations.

6    Defense counsel must file a status report when the foregoing validation procedure has
7    begun, but no later than **NOVEMBER 18, 2010**, including the projected date of the interview with
8    Castro required by the validation regulations. *See* Cal. Admin. Code tit. 15, § 3378(c)(6).
9    Defense counsel must also file the declarations and motion described above when the validation
10   procedure is complete. Nevertheless, this order sets a further case management conference for
11   **MARCH 3, 2011, AT 11:00 A.M.**

13   **IT IS SO ORDERED.**

15   Dated: October 29, 2010.

     WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE