KAMALA D. HARRIS
Attorney General of California
THOMAS S. PATTERSON
Supervising Deputy Attorney General
BRENDAN M. KENNY
Deputy Attorney General
State Bar No. 237969
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5744
  Fax: (415) 703-5480
  E-mail: Brendan.Kenny@doj.ca.gov
*Attorneys for Defendants Ayala, Ayers, Batchelor, Campbell, Derusha, Garibay, Gonzales, Hood, Martinez, Scribner, Stokes, Terhune, and Yarborough*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CARLOS CASTRO,**<br><br>                    Plaintiff,<br><br>v.<br><br>**CAL TERHUNE, et al.,**<br><br>                    Defendants. | C 98-4877 WHA (PR)<br><br>**DEFENDANTS' REPLY REGARDING THEIR MOTION TO TERMINATE**<br><br>Date: June 30, 2011<br>Time: 2:00 p.m.<br>Courtroom: Courtroom 9, 19th floor<br>Judge: The Honorable William Alsup<br>Action Filed: December 22, 1998 |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................................ 1

Argument ................................................................................................................................... 2

    I.    The new validation procedure provided Castro with all the process he was due. ............................................................................................................................. 2

    II.   This Court's review of Castro's validation procedure is limited to the procedural process that CDCR gave Castro. ........................................................... 6

    III.  Even if this Court could review the substance of Castro's validation, there is more than enough evidence supporting it. ........................................................... 8

Conclusion ............................................................................................................................... 11

i

Defs.' Reply re Mot. Termin.  (C 98-4877 WHA (PR))

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bruce v. Ylst*
351 F.3d 1283 (9th Cir. 2003) .................................................................................................. 9

*Castro v. Terhune*
29 Fed. Appx. 463 (9th Cir. 2002) ........................................................................................... 5

*In re Rozenkrantz*
128 Cal. Rptr.2d 104 (2002) .................................................................................................... 8

*Poore v. Alameida*
C 03-04115 MJJ, 2006 WL 2458719 (N.D. Cal. Aug. 22, 2006) ............................................ 5

*Raditch v. U.S.*
929 F.2d 478 (9th Cir. 1991) ............................................................................................... 2, 7

*Stuart v. Alameida*
418 F. Supp. 2d 1154 (N.D. Cal. 2006) .................................................................................. 7

*Superintendent v. Hill*
472 U.S. 445 (1985) ................................................................................................................ 8

*Swarthout v. Cook*
131 S. Ct. 859 (2011) ............................................................................................... 1, 6, 7, 8

*Wilkinson* v. *Austin*
545 U.S. 209 (2005) ................................................................................................................ 7

**STATUTES**

California Code of Regulations, Title 15, § 3378(c)(4) ............................................................... 4

ii

Defs.' Reply re Mot. Termin.  (C 98-4877 WHA (PR))

**INTRODUCTION**

As this Court ordered, CDCR gave Castro a new validation procedure. Pelican Bay State Prison Institutional Gang Investigator David Barneburg disclosed the evidence used in the validation procedure to Castro and his counsel more than a month before the validation interview. Castro's counsel spoke for most of the almost-three-hour recorded interview, and provided Barneburg with hundreds of pages of argument and exhibits. Two other Orrick attorneys were at Pelican Bay for support. Barneburg prepared a reasoned thirteen-page form recommending Castro's validation as a prison-gang associate. He explained that he used CDCR's definition of "associate," described why Castro met that definition, and responded in detail to Castro's arguments about the evidence. Barneburg ultimately decided that five of the nine pieces of evidence met CDCR's standards. The Office of Correctional Safety (OCS) agreed, and approved Castro's validation as a Mexican Mafia prison-gang associate.

Defendants' counsel and all participants in Castro's validation procedure identified their communications regarding the validation procedure and testified that they acted free of bias and in good faith.

Nevertheless, Castro argues that he has still not received the process due to him because Barneburg and OCS predetermined the outcome of the validation procedure, and because the evidence is flawed. He again requests that this Court release him from the Security Housing Unit, appoint a special master to oversee any future attempt to validate Castro, and expunge all his prior validations.

Castro's apparent dissatisfaction with the interview's outcome, however, does not mean that the process was some kind of sham or that the evidence was flawed. Defendants abided by this Court's order, and Castro received all the process he is due. Moreover, Castro's disputes over the evidence that supports his validation are fruitless because he has no remaining due-process claim that challenges whether his validation is supported by adequate evidence. Additionally, the Supreme Court's recent decision in *Swarthout v. Cook* necessarily implies that the Due Process Clause affords no federal judicial review over whether the evidence was sufficient. 131 S. Ct. 859 (2011). And even if this Court could review the substance of the

1

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

validation, the five pieces of evidence easily meet the applicable some-evidence standard. Therefore, the PLRA requires that this Court terminate the case.

## ARGUMENT

**I. THE NEW VALIDATION PROCEDURE PROVIDED CASTRO WITH ALL THE PROCESS HE WAS DUE.**

Defendants provided Castro with the "'procedural correction'—i.e., further process"—that this Court ordered. (*See* Remedial Order to Conduct New Validation Procedure, Oct. 29, 2010, 1:27–2:2) (citing *Raditch v. U.S.*, 929 F.2d 478, 481 (9th Cir. 1991).) And Castro's arguments that Defendants predetermined the outcome of the court-ordered validation procedure are either unsupported by the facts or otherwise without substance. (Pl.'s Opp. Defs.' Mot. Termin. (Pl.'s Opp.) 6:17–14:9.)[1]

### LIEUTENANT BARNEBURG'S INVESTIGATION AND REVIEW

Castro provides no evidence that Barneburg or the other participants in Castro's validation procedure action in bad faith. In fact, the evidence shows Barneburg's good faith. Barneburg reviewed Castro's central file and identified evidence from it that he believed showed Castro's gang involvement. (Decl. Barneburg Supp. Defs.' Mot. Termin. (Decl. Barneburg) ¶ 15.) At the almost-three-hour interview, which Barneburg captured on a hand-held audio recorder, Barneburg took notes, and asked questions of Castro and his counsel. (*Id.* ¶ 18.) Based on the interview and the 66 pages of argument and 392 pages of exhibits he reviewed (*id.* ¶ 19), Barneburg concluded that four of the original nine items initially disclosed to Castro and his counsel did not meet CDCR's standards. (Decl. Kingston Supp. Defs.' Mot. Termin. (Decl. Kingston) Ex. B at "Gang

---

[1] Castro alleges that Defendants predetermined the results of Castro's validation procedure because:
• Lieutenant Barneburg supposedly did not investigate Castro's gang activity or consider Castro's arguments in good faith (Pl.'s Opp. 6:17–9:1);
• OCS approved Castro's validation without waiting for Castro's counsel to submit responses to Barneburg's validation form—a procedure the Court did not order and CDCR regulations do not require (*id.* at 9:8–10:7);
• Barneburg used CDCR's definition of prison-gang associate rather than his own, and purportedly did not specify why Castro is one (*id.* at 9:2, 10:8–12:16); and • Barneburg allegedly did not evaluate whether Castro is currently a prison-gang associate, despite his lengthy decision on the issue and detailed evaluation of the evidence (*id.* at 12:17–14:9).

2

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

Validation Chrono," pp. 4–13.)  Castro argues that Barneburg must have acted in bad faith because anyone would have known not to include these items in the first place.  (Pl.'s Opp. 8:12–13.)  Thus, Castro seems to argue that Barneburg ultimately chose not to submit these items only to camouflage his bias.

But the facts are very different from Castro's counsel's "picture of an entire prison administration on a mission to get their client" (Remedial Order to Conduct New Validation Procedure, Oct. 29, 2010, 5:2–3).  Barneburg considered Castro's arguments in good faith, and he agreed with some of them.  (Decl. Barneburg ¶ 21.)  Indeed, Castro's counsel stated at the last case-management conference that Barneburg was "very attentive" during the interview.  (Decl. Kenny Supp. Defs.' Reply re Mot. Termin. (Decl. Kenny Reply) Ex. A at 5:9–10.)  Castro was not validated as a prison-gang associate because the outcome was predetermined; he was validated because the gang-validation package contained five pieces of evidence that met CDCR's standards.  (*See* Decl. Barneburg ¶ 21.)

Castro also argues that Barneburg acted in bad faith because he relied on hearsay statements in confidential memoranda after Castro's counsel gave him a "fulsome explanation of hearsay."[2]  (Pl.'s Opp. 8:21–9:1.)  But in his validation form, Barneburg acknowledged that CDCR regulations prohibit exclusive reliance on hearsay, and he explained why the informants' statements implicating Castro in gang activity were corroborated.  (*E.g.*, Decl. Kingston Ex. B at "Gang Validation Chrono," pp. 6, 10–12.)

### OCS'S DECISION

Castro argues that OCS predetermined the outcome of the validation procedure because OCS too quickly validated Castro on April 19 after Castro's counsel informed OCS that they intended to submit responses to Barneburg's validation form.  (Pl.'s Opp. 9:9–10:7.)  At the case-management conference in March 2011, Castro's counsel asked this Court to order CDCR to speed up the validation procedure for Castro's benefit.  (Decl. Kenny Reply Ex. A at 6:4–7.)  But the next month, Castro's counsel e-mailed Defendants' counsel and several CDCR officials

---

[2] "The word [fulsome] means 'repugnant (because overdone),' not 'very full.'"  BRYAN A. GARNER, THE ELEMENTS OF LEGAL STYLE 116 (OXFORD UNIVERSITY PRESS 2002).

3

Defs.' Reply re Mot. Termin.  (C 98-4877 WHA (PR))

requesting the following: that OCS halt the validation procedure until Castro's counsel could submit responses to Barneburg's validation form; and that OCS conduct an in-person hearing with Castro's counsel so they could again challenge the evidence. (Decl. Kenny ¶ 12, Ex. E.) OCS approved Castro's validation two working days after Castro's counsel made these requests. (*Compare id. and* Decl. Kingston Ex. B at "SSU Gang Validation/Rejection Review.") Because the requests were unwarranted by this Court's order or CDCR regulations, it was not necessary that OCS grant them. (*Id.*) In any event, the OCS reviewers of Castro's gang-validation package were unaware of Castro's requests to Defendants' counsel and other CDCR officials. (*See* Decl. McClure Supp. Defs.' Mot. Termin. (Decl. McClure) ¶¶ 5–7; Decl. Rogers Supp. Defs.' Mot. Termin. (Decl. Rogers) ¶¶ 5–7.) Thus, it is irrelevant that they validated Castro before Castro's counsel provided the responses to Barneburg's validation form.

## BARNEBURG'S DEFINITION OF PRISON-GANG ASSOCIATE

Castro incorrectly argues that Barneburg should have proffered his own definition of prison-gang associate rather than follow CDCR's definition, and that Barneburg failed to explain how Castro could be a prison-gang associate. (Pl.'s Opp. 11:24–12:16.) As Barneburg noted in his validation form, the only definition of prison-gang associate accepted by CDCR is in title 15, section 3378(c)(4) of the California Code of Regulations. (Decl. Kingston Ex. B at "Gang Validation Chrono," pg. 13.) If he had created his own definition of associate, he could have run afoul of this Court's order that participants follow CDCR regulations. (*See* Remedial Order to Conduct New Validation Procedure, Oct. 29, 2010, 3:6–7 (participants in validation procedure must "follow the rules").) And Barneburg's form explains in detail why he recommended Castro's validation as a prison-gang associate. (Decl. Kingston Ex. B at "Gang Validation Chrono," pp. 1–13.)

Castro is also incorrect that CDCR's prison-gang associate definition is unconstitutionally vague because it does not put inmates on notice of what conduct is prohibited and CDCR officials cannot consistently apply it. (Pl.'s Opp. 10:22–11:2.) In this very case, the Ninth Circuit affirmed this Court's holding that prison officials satisfied the Due Process Clause's notice requirement in 1997 when they informed Castro that he was being investigated for being a prison-

4

gang member and then validated him as a gang associate. *Castro v. Terhune*, 29 Fed. Appx. 463, 464–65 (9th Cir. 2002). Because CDCR's prison-gang member definition was specific enough to satisfy the notice requirement for Castro's validation as a prison-gang associate, CDCR's actual associate definition is not unconstitutionally vague. *See also Poore v. Alameida*, C 03-04115 MJJ, 2006 WL 2458719, *7 fn.12 (N.D. Cal. Aug. 22, 2006) (rules governing gang validation are not unconstitutionally vague).

## CURRENT GANG ACTIVITY

Castro misperceives this Court's order to determine whether Castro is a *current* gang associate when he argues that Barneburg's reliance on past evidence was inadequate. (*E.g.*, Pl.'s Opp. 12:17–14:9.) As Barneburg noted, this Court's order did not forbid the use of past evidence to support a finding of current gang association; it merely directed CDCR to determine whether Castro is currently an associate, not whether Castro was one in 1997 or 2009. (Decl. Kingston Ex. B at "Gang Validation Chrono," pg. 13.) And this Court was careful to note that the decision maker could use earlier evidence to show association. (Remedial Order to Conduct New Validation Procedure, Oct. 29, 2010, 2:9–11.) Barneburg correctly interpreted the Court's order as requiring him to conduct a new validation procedure, rather than simply review an older one, and he submitted evidence ranging from two to ten years old showing that Castro is currently a prison-gang associate. (Decl. Kingston Ex. B at "Gang Validation Chrono," pp. 1–13.) And Barneburg explained how the evidence showed that Castro is currently a prison-gang associate. (*Id.*)

CDCR necessarily uses older evidence to show current gang association. Indeed, it is difficult to imagine how CDCR could validate anyone if this was not the case, other than if the inmate confessed to being a prison-gang member or associate at the validation interview. Even then, the validation would immediately be outdated because the inmate could immediately argue that he was no longer involved with the gang. Because the language and gist of this Court's order allowed that CDCR could use earlier evidence, and because Barneburg explained how the evidence showed that Castro is currently a prison-gang associate, Castro's validation complied with this Court's order.

5

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

In sum, the facts actually show that CDCR complied with this Court's order. And because Defendants complied with this Court's order in full, this Court must terminate the action.

## II. THIS COURT'S REVIEW OF CASTRO'S VALIDATION PROCEDURE IS LIMITED TO THE PROCEDURAL PROCESS THAT CDCR GAVE CASTRO.

Castro again argues that this Court should determine the sufficiency of the evidence used in Castro's gang-validation package. (Pl.'s Opp. 22:20–24:15.) It seems that Castro wants this Court to test the sufficiency of the evidence under both the some-evidence standard and CDCR's regulations. In either case, this Court's and the Ninth Circuit's orders limit the Court's review to the procedural process that this Court ordered to cure the 1997 validation's procedural defects. Additionally, the Supreme Court's decision in *Swarthout v. Cook*, 131 S. Ct. 859 (2011), supports this Court's decision about the limited scope of Castro's remedy.

The Court ruled that Castro's remedy for the 1997 validation's deficiencies is a procedural correction because this Court previously held that sufficient evidence to meet the "some evidence" standard supported Castro's 1997 validation, since "the old evidence was still sufficient based on the minimally stringent standard it must meet" (Order Denying Mots. for Summ. J. & Granting Mot. File Ex. Under Seal & Confirming Trial Date, Oct. 5, 2009). And as explained below, Castro's arguments that the Court should revisit its previous ruling are unavailing.[3]

### REVIEW OF THE EVIDENCE

Castro seems to argue that unless a court reviews the evidence supporting a validation decision, it cannot determine whether appropriate procedural protections were afforded leading up to the decision. (*See* Pl.'s Opp. 23:5–10.) But this conflates procedural protections that are meant to ensure a proper decision with review over the decision's actual substance.

---

[3]  Castro argues that this Court must review the sufficiency of the evidence for the following reasons:
• The Due Process Clause requires that this Court test the evidence, because an inmate's opportunity to express his views during a validation interview is supposedly meaningless (Pl.'s Opp. 23:5–10);
• The evidence found to be sufficient in 1997 was not used in the new procedure (*id.* at 23:25–24:3); and
• *Swarthout* did not explicitly eliminate the some-evidence standard for gang validations, when it eliminated some-evidence review for parole-consideration decisions, which implicate a higher liberty interest (*id.* at 24:4–15).

6

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

In fact, courts routinely consider procedural-due-process claims without addressing the merits of the substantive claim. For instance, in *Raditch*, 929 F.2d at 482–83 n.5, the Ninth Circuit held that the merits of procedural-due-process claims are determined independently of the merits of the substantive claim. And in *Wilkinson* v. *Austin*, the Supreme Court determined that inmates have a federal-due-process interest in receiving notice and an opportunity to express their views before being housed in administrative segregation indeterminately. 545 U.S. 209, 228–29 (2005). *Wilkinson* never addressed whether there was a substantive requirement for indeterminate administrative-segregation housing. *Id.*

Here, Castro has only a procedural claim. Following *Raditch* and the gang-validation cases applying *Raditch*, this Court need not look to the substance of the decision to determine whether Castro received the procedural protections that the Court ordered. *See, e.g., Stuart v. Alameida*, 418 F. Supp. 2d 1154, 1166–67 (N.D. Cal. 2006).

### 1997 EVIDENCE

Castro also argues that this Court must test the sufficiency of the evidence because the evidence that this Court found sufficient to validate Castro in 1997 was not used in Castro's new validation procedure. (Pl.'s Opp. 23:20–24:3.) Castro seems to misunderstand what remains of his case. The only thing remaining for this Court to do is determine whether the new validation procedure cured the 1997 validation's procedural defects. Because this Court already determined that *Raditch* required it to do so by providing Castro with a procedural remedy, its review does not include the substance of the validation evidence. (*See* Remedial Order to Conduct New Validation Procedure, October 29, 2010, 1:27–2:2.)

### *SWARTHOUT*

Castro misunderstands *Swarthout* to simply hold that a state-law violation does not equate to a constitutional violation. (Pl.'s Opp. 24:4–15.) But *Swarthout* stands for much more than that. In *Swarthout*, the Supreme Court held that an inmate has only a procedural-due-process right in the parole context, and that there is no judicial review of the substance of the parole decision. 131 S. Ct. at 862–63. And because an inmate's liberty interest in avoiding segregated housing is less significant than the interest in being released to free society, *Swarthout* necessarily implies

7

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

that inmates who are placed in segregated housing receive no federal review over those decisions, such as the decision regarding Castro's housing based on gang ties.

Castro also incorrectly contends that his position is supported by the fact that *Swarthout* did not overrule *Superintendent v. Hill*, 472 U.S. 445 (1985), which provided some-evidence review for decisions to revoke prisoners' sentence credits. As *Swarthout* seems to acknowledge, however, *Hill* dealt with a higher-level of liberty interest, which in turn warranted additional process. *See Swarthout*, 131 S. Ct. at 863 n.* (noting that *In re Rozenkrantz*, 128 Cal. Rptr.2d 104 (2002), a California Supreme Court decision in the parole context, "did not purport to equate California's parole system with good-time credits"). In fact, when the Supreme Court decided in *Hill* to extend some-evidence review to sentence-credit revocations, it explicitly relied on the high level of liberty interest that was at stake. *Hill*, 472 U.S. at 454 ("Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily."). An inmate's possession of sentence credits dictates that he will be released from prison earlier. And taking them away equates to an extension of the inmate's firmly expected release. This is much different from an inmate's more-speculative interest in being granted discretionary release on parole, or the similarly speculative interest in being housed in the general population of a prison, subject to prison officials' determination that the particular housing assignment does not unduly risk the safety of other inmates and staff. It makes sense, then that the Supreme Court ruled that lower due-process protection is applied in the parole context, and it is only rational that no more protection would be afforded in the prison-housing context.

Because this Court already determined that there is sufficient evidence supporting Castro's gang validation and *Swarthout* implies that the Due Process Clause does not afford federal judicial review over the substance of prison-gang validations, this Court need only look to whether Castro received the court-ordered procedural process.

### III. EVEN IF THIS COURT COULD REVIEW THE SUBSTANCE OF CASTRO'S VALIDATION, THERE IS MORE THAN ENOUGH EVIDENCE SUPPORTING IT.

Castro argues at length that the items used in his 2011 validation procedure do not meet CDCR's standards, and seems to argue that this Court should reject them on that basis. (Pl.'s

8

1  Opp. 14:11–22:25.) But even if this Court could review the substance of the validation, it would
2  be under the some-evidence standard, and the evidence easily meets this standard.

3  Under the some-evidence standard, federal courts determine whether there is *any* evidence
4  in the record supporting the prison's determination. *Bruce v. Ylst*, 351 F.3d 1283, 1287–88 (9th
5  Cir. 2003). In *Bruce*, the Ninth Circuit affirmed the district court's holding that there was "some
6  evidence" in the record to validate inmate Bruce as a prison-gate associate. *Id.* The evidence
7  consisted of: a police report stating that Bruce was a prison-gang associate; a probation report
8  noting that Bruce's codefendant on his underlying conviction was also a validated member of the
9  gang; and a confidential prison informant's statement. *Bruce*, 351 F.3d at 1287–88

10 In this case, Castro argues voluminously that the evidence used against him was flawed.
11 But as the table indicates, the five items of evidence presented by Barneburg in the gang-
12 validation package are much more than what the Ninth Circuit found sufficient in *Bruce*, and
13 more than sufficient to validate Castro here.

| Evidence of Gang Association: | Reasons: |
|---|---|
| Aztec War Shield Drawing (Source Item #1) | CDCR identified the war shield as a Mexican Mafia prison-gang symbol, and the war shield was found in Castro's cell during a 2009 cell search.[4] This was the same search that uncovered a razor blade that Castro hid in a book's binding.[5] |
| February 2009 Confidential Memorandum (Source Item # 2) | The informant had first-hand knowledge that the Mexican Mafia assigned Castro to a leadership position, and that the informant was under Castro's authority.[6] |

---

[4] Decl. Kingston Ex. B, "Gang Validation Chrono" at pg. 5.
[5] *Compare* Decl. Kingston Ex. B, "General Chrono," dated April 28, 2009 *and* Decl. Kenny Reply Ex. B at CF 2251, 2277–78, 2284.
[6] Decl. Kingston Ex. B, "Gang Validation Chrono," at pg. 6.

9

Defs.' Reply re Mot. Termin.  (C 98-4877 WHA (PR))

| | |
|---|---|
| Birthday Card (Source Item # 3) | Castro signed a birthday card that was found in the property of a Mexican Mafia associate in 2008.[7] It was signed by two Mexican Mafia associates, but not by inmates of other ethnicities housed in the same area.[8] |
| Aztec Chief and Aztec Ruins Drawing (Source Item # 4) | The drawings were signed by validated Mexican Mafia associates housed in the same area as Castro, and contained symbols that CDCR identified as belonging to the Mexican Mafia.[9] The drawings were found in Castro's cell during the same 2006 search that uncovered a razor that Castro hid in a legal transcript.[10] |
| March 2004 Confidential Memorandum and Addendum (Source Item # 6)[11] | The informant reported that a Mexican Mafia member told him he could stab an inmate with one of his two razor knives, and ordered him to give Castro the other one.[12] The informant stabbed the inmate with a razor, flushed it down the toilet, and gave Castro the other razor.[13] |

---

[7] Decl. Kingston Ex. B, "Gang Validation Chrono," at pg. 7.
[8] Id.
[9] Decl. Kingston Ex. B, "Gang Validation Chrono" at pp. 8–9.
[10] Compare Decl. Kingston Ex. B at "Gang Chrono" dated July 7, 2006 and Decl. Kenny Reply Ex. B at CF 0514, 1487, 1488–1491
[11] Because Barneburg referenced evidence that he ultimately determined did not meet CDCR's standards, he did not consecutively number the five accepted pieces of evidence. (See Decl. Kingston Ex. B at "Gang Validation Form.")
[12] Id. at pp. 10–11.
[13] Id. at pg. 12.

10

Defs.' Reply re Mot. Termin.  (C 98-4877 WHA (PR))

Thus, even if this Court can review the substance of the evidence used in the validation procedure, it easily met the minimal some-evidence standard. Thus, the PLRA requires that this Court terminate this case.

## CONCLUSION

Castro has received all the process that this Court ordered. He received the only relief he was entitled to: a procedural correction to the 1997 validation's procedural defects. The validation procedure proves this Court's statement at the last case-management conference correct: "[Castro] may be in solitary confinement right now, but he is the luckiest litigant in the State of California, as far as I'm concerned." (Decl. Kenny Reply Ex. A at 6:21–23.) Castro's arguments about bias are without merit, and his arguments about the evidence—assuming this Court could even review the substance of the validation evidence—do not establish that the evidence failed to meet the constitution's minimal some-evidence standard. Now that Castro received process, this Court must terminate the case.

Dated: June 16, 2011

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
THOMAS S. PATTERSON
Supervising Deputy Attorney General

/s/ BRENDAN M. KENNY

BRENDAN M. KENNY
Deputy Attorney General
*Attorneys for Defendants Ayala, Ayers, Batchelor, Campbell, Derusha, Garibay, Gonzales, Hood, Martinez, Scribner, Stokes, Terhune, and Yarborough*

CF1999CX0023
20469850.doc

11

Defs.' Reply re Mot. Termin. (C 98-4877 WHA (PR))

# CERTIFICATE OF SERVICE

Case Name:   **Castro v. Terhune, et al.**          Case No.   C 98-4877 WHA (PR)

I hereby certify that on June 16, 2011, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY REGARDING THEIR MOTION TO TERMINATE**

**DECLARATION OF BRENDAN KENNY IN SUPPORT OF DEFENDANTS' REPLY REGARDING MOTION TO TERMINATE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 16, 2011, at San Francisco, California.

|  |  |
|---|---|
| M. Xiang | /s/ M. Xiang |
| Declarant | Signature |

20472958.doc