United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS CASTRO,

    Plaintiff,

  v.

CAL TERHUNE, ROBERT L. AYERS, JR., G. BONNIE GARIBAY, M. YARBOROUGH, A. SCRIBNER, L. HOOD, J. STOKES, C. CAMPBELL, A. M. GONZALES, M. AYALA, S. C. WOLHWEND, A. JORDAN, J. MARTINEZ, J. BATCHELOR, and E. DERUSHA,

    Defendants.

No. C 98-04877 WHA

**ORDER TERMINATING ACTION**

## INTRODUCTION

This order follows a bench trial, a resulting finding that plaintiff was denied procedural due process when he was validated as a prison gang associate in 1997, and a remedial order to conduct a new validation procedure (Dkt. No. 396). As contemplated as a possible outcome by the remedial order, defendants now move to terminate this action, having complied with the remedial requirements. For the reasons below, the motion is now **GRANTED**. Defendants have fulfilled all of the requirements of the remedial order and plaintiff's challenges to termination fail.

## STATEMENT

Plaintiff commenced this action in December 1998, asserting that his 1997 validation as a Mexican Mafia prison-gang associate violated his right to due process. In January 2010, following a bench trial, the undersigned found that plaintiff had not been afforded procedural due

process in his 1997 validation because he had never been given a meaningful opportunity to be heard by the critical decision-maker. In October 2010, a remedial order required the California Department of Corrections and Rehabilitation to conduct a new validation procedure to determine whether plaintiff is a Mexican Mafia prison-gang associate. The specific requirements set out in the remedial order will be addressed below in the context of evaluating whether they were fulfilled.

By way of overview of the gang-validation procedure, the Pelican Bay State Prison Institutional Gang Investigations Unit investigates various source items and decides whether they constitute sufficient evidence that an inmate is a prison-gang associate. The unit interviews the inmate about the evidence after notice to the inmate and provides an opportunity for rebuttal; the Institutional Gang Investigator makes a recommendation to the Office of Correctional Safety about whether to validate (which must be based on at least three source items); and then OCS decides whether to accept or reject the recommendation based on a review by two OCS agents. CAL. ADMIN. CODE, tit. 15, § 3378(c); (Barneburg Decl. ¶¶ 3–8; Kingston Decl. ¶¶ 2–4).

After receiving the remedial order, defense counsel informed CDCR officials of the order and CDCR's responsibilities under it (Kenny Decl. ¶ 2; Patterson Decl. ¶ 2). Everett Fischer, the OCS litigation coordinator, communicated with CDCR counsel regarding the order (Fischer Decl. ¶¶ 3–5). He then contacted Senior Special Agent Bryan Kingston, and asked him to coordinate the validation procedure for OCS (Fischer Decl. ¶ 6; Kingston Decl. ¶ 5). Kingston contacted Pelican Bay IGI Lieutenant David Barneburg regarding the order and scheduling, and then advised CDCR counsel of his discussion with Barneburg (Kingston Decl. ¶ 6; Barneburg Decl. ¶¶ 11, 13). CDCR counsel in turn followed up with Barneburg (Barneburg Decl. ¶ 4).

Preceding the validation process, Supervising Deputy Attorney General Thomas Patterson helped facilitate several requests of plaintiff's counsel regarding the validation interview and in-person meetings with plaintiff. Once the validation procedure began, he referred such questions to an attorney in the State Attorney General's Sacramento office (Patterson Decl. ¶ 3).

IGI Lieutenant Barneburg had never been involved in any of Castro's previous validation procedures, and he conducted Castro's new validation procedure himself (Barneburg Decl. ¶ 11).

2

1    Lieutenant Barneburg reviewed Castro's central file to determine whether it contained items
2    showing gang activity, searched Castro's cell and took photographs of Castro, and then disclosed
3    the evidence to Castro on December 17, 2010 (Barneburg Decl. ¶¶ 15–17). Plaintiff's counsel
4    received notice of the evidence soon thereafter. The gang-validation interview occurred on
5    January 24, 2011. Plaintiff's counsel, Attorney James Burns, appeared at the interview, with two
6    other of plaintiff's counsel also present at Pelican Bay (but in another room) to assist him. Castro
7    did not provide a written response to the evidence. Instead, Attorney Burns spoke on Castro's
8    behalf and gave Lieutenant Barneburg a binder containing 66 pages of argument and 392 pages of
9    exhibits (Barneburg Decl. ¶ 18; Kenny Decl. ¶ 8).

The almost-three-hour-long interview was recorded by a videographer and a court reporter. Lieutenant Barneburg listened attentively to the presentation of plaintiff's counsel and the limited testimony of Castro himself. He captured the interview on a hand-held audio recorder for his own use, took notes, and asked questions of the attorneys and Castro (Barneburg Decl. ¶ 19; Kenny Decl. ¶ 8 and Exhs. A–B).

During the interview, Attorney Burns challenged, among other things, the reliability of a confidential memorandum that identified Castro as being the intended recipient of a weapon at the direction of a Mexican Mafia gang member. Because the memo did not expressly state whether Castro had received the weapon, Lieutenant Barneburg asked the author of the memo (Lieutenant Vanderhoofven) to call the informant who provided the information and ask follow-up questions. The informant confirmed that in fact he gave Castro a weapon at the direction of the gang member. Vanderhoofven prepared an addendum to his earlier memo (Barneburg Decl. ¶ 20).

On March 14, 2011, Lieutenant Barneburg sent Castro's gang-validation package to OCS for review. He recommended that Castro be validated as a Mexican Mafia prison-gang associate. In a thirteen-page validation form, he wrote why each of the nine items of evidence included with the package did or did not show gang association. He found that five of the nine source items did

show gang association.[1] He reviewed plaintiff's opinions about the evidence by referring to his audio recording of the interview, his interview notes, the parties' written submissions, and his memory of the interview. He used the prison-gang-associate definition provided in state regulations — which he states is the only definition accepted by CDCR (Barneburg Decl. ¶ 21; Kingston Decl. Exh. B).

In a declaration, Lieutenant Barneburg states that he has at no time had any bias against Castro. He was never told by anyone to recommend Castro's validation as a prison-gang associate. Before signing the validation package, he fairly considered Castro's statements and his counsel's statements in response to each item of evidence. Based on his experience as a gang investigator and knowledge regarding prison gangs, he determined that the evidence indicated Castro's involvement in gang activity, that the evidence met CDCR's standards, and that Castro should therefore be validated as a prison-gang associate (Barneburg Decl. ¶ 25).

Once the validation package was sent to OCS, Special Agent Doug McClure was the primary reviewer and Special Agent Charlie Rogers was the secondary reviewer. After they were asked to review the validation package by Senior Special Agent Kingston, they conducted independent reviews of the validation package and did not discuss the specifics of the validation package with anyone (McClure Decl. ¶¶ 5–6; Rogers Decl. ¶¶ 5–7; Kingston Decl. ¶¶ 8–10).

On April 19, Agents McClure and Rogers signed the OCS form validating Castro as a prison-gang associate (Kingston Decl. Exh. B).

The agents have submitted declarations stating that they considered Castro's and his counsel's statements and arguments in response to each item of evidence. Based on their experience reviewing gang-validation packages and their knowledge of prison gangs, they determined that the evidence indicated Castro's involvement in prison-gang association, that the five items of evidence met CDCR's current standards, that Castro received an opportunity to express his views regarding the evidence supporting the validation, and that Castro should be

---

[1] At the hearing on this motion, plaintiff's counsel argued that the 1991 confidential memorandum is unreliable and should not be used as a source item. In fact, Lieutenant Barneburg *agreed*. He specifically rejected the use of the 1991 memo as a source item in his report.

4

1  validated as a Mexican Mafia prison-gang associate. No one told them to validate Castro. If they
2  had believed that an item of evidence did not meet CDCR's standards, they would not have
3  accepted the item. If they had believed that there was insufficient evidence supporting the
4  validation, they would have rejected Lieutenant Barneburg's recommendation (McClure Decl. ¶¶
5  6–7; Rogers Decl. ¶¶ 7–8).

6  This order notes that plaintiff's counsel requested a separate interview with OCS both
7  before Lieutenant Barneburg recommended validation (in the event that validation was
8  recommended) and while OCS was considering the validation package. At both times, defense
9  counsel stated that neither CDCR regulations nor the remedial order afforded Castro an OCS
10 interview, and if Castro sought modification of the Court order, he would need to address that
11 with the Court (Kenny Decl. ¶¶ 10–11 and Exhs. C–D). Plaintiff's counsel did not do so. In
12 addition, plaintiff's counsel attempted to submit to OCS, via defense counsel, a letter responding
13 to the validation form and package prepared by Lieutenant Barneburg, as well as an additional
14 subsequent response containing 19 pages of briefing and 400 pages of documents. Deputy
15 Attorney General Brendan Kenny referred both of these latter submissions to the designated
16 attorney in the State Attorney General's Sacramento office and did not contact CDCR about them
17 himself because he could have violated the remedial order by doing so (Kenny Decl. ¶¶ 12–13
18 and Exh. E).

19 Soon after the OCS decision to accept the IGI's recommendation and to validate Castro as
20 a prison-gang associate, defense counsel filed a notice of decision with the Court, and a briefing
21 schedule was set for defendants' motion to terminate this case based on fulfillment of the
22 remedial order's requirements. Plaintiff's counsel opposed. A hearing was held on June 30.

## ANALYSIS

24 Defendants have complied with the remedial order and this case shall now be closed. A
25 review of the record shows that the State has carried its burden to fulfill the remedial order's
26 requirements. For the vast majority of the requirements in the remedial order, including the

5

following, plaintiff does not challenge the State's compliance, and the post-validation record also demonstrates such compliance:[2]

> A validation process in compliance with state and CDCR regulations except as set forth in the remedial order.
>
> *Remedial order requirement No. 1:* The presence of one lawyer for plaintiff at the validation interview; and use of discovery obtained in this action to challenge the reliability of various source items at the interview.
>
> *Remedial order requirement No. 2:* Notice of at least 72 hours of the source items to be used against plaintiff and of the time and place of the interview.
>
> *Remedial order requirement No. 3:* Except for attendance and advocacy at the interview, no communication between Deputy Attorney Generals Ken Roost and Brendan Kenny, on the one hand, and anyone in the prison system, on the other, directly or indirectly regarding prison gang validations. No communication between Supervising Deputy Attorney General Tom Patterson directly or indirectly with anyone in the prison system regarding Carlos Castro; *and* no communication between him and anyone in the prison system *directly* regarding anything having to do with prison gang validations.[3]
>
> *Remedial order requirement No. 4:* No involvement whatsoever by Assistant IGI Short in the revalidation; and the IGI/decision-maker was someone who was not previously involved in this matter.
>
> *Remedial order requirement No. 5:* Warning to all participants in plain terms that they must follow the rules, be unbiased, fairly weigh the evidence, and reach just conclusions.
>
> *Remedial order requirement No. 7:* A recording of the interview with plaintiff.
>
> *Remedial order requirement No. 8:* Declarations of the decision-maker and all individuals involved in the process setting forth the full process followed and identifying and describing any communications that they had with *anyone* on the subject of Carlos Castro since June 30, 2010, other than communications appearing in the administrative record and communications with Carlos Castro.[4] Verification in the declarations of "the IGI . . . or anyone else who assisted in the process" that they had no bias against Mr. Castro and made decisions solely on the merits.

---

[2] The requirements that *are* challenged by plaintiff's counsel are omitted here and addressed below.

[3] The difference for Attorney Patterson followed from the fact that he is a Supervising Deputy Attorney General and thus had other cases that might have been prejudiced by the broader prohibition. Plaintiff's counsel had no objection to this provision.

[4] Both the remedial order and a subsequent order (Dkt. No. 399) further detailed the requirements for such logs.

*Remedial order requirement No. 9:* Prior to commencement of the validation procedure, defense counsel advised the CDCR of the remedial order requirements and removed any obstacles to its implementation (without steering the outcome of the proceeding); once the procedure commenced, defense counsel stayed clear of the process until its completion (except for attendance and advocacy at the interview).

*Remedial order requirement No. 10:* Defense counsel notified the Court of the validation decision and moved to terminate this action, including the required declarations in their submissions.

Again, plaintiff in no way challenges that these aspects of the remedial order were properly provided by the State.

On the other hand, plaintiff's counsel argue resolutely that this order should review the substance of the validation decision, including a *de novo* vetting of the source items relied on in support of the decision. Counsel advocates that an evaluation of the procedure provided should include evaluation of the substance of the evidence. Yet, to quote the remedial order:

> A new validation is needed because it is the only way to provide plaintiff with procedural due process. The proper remedy for a procedural due process violation is "a procedural correction" — *i.e.*, further process. *See Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991); *see also, e.g.*, *Stewart v. Alameida*, 418 F. Supp. 2d 1154, 1166–67 (N.D. Cal. 2006). . . . *see also Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2000) ("the nature of the violation determines the scope of the remedy") (citation omitted).

This action has been actively litigated for twelve and a half years. The remedy provided was a procedural one.[5] This order will not go back to square one to evaluate the substance of the validation decision. Proper due process, not the substantive outcome, has always been the crux of this case.

Plaintiff's counsel attempt, however, to shoehorn substance into procedure, by arguing that the evidence was so insufficient that the procedure could not have been sincere and fair. Counsel state that Lieutenant Barneburg "submitted evidence so weak that he could not have possibly acted in good faith[, and] OCS confirmed this by intentionally ignoring Defendants'

---

[5] This order therefore declines to take up the issue of whether *Swarthout v. Cooke*, 131 S.Ct. 859 (2011), has affected the propriety of evaluating whether "some evidence" supports a California prison-gang validation finding in a due process challenge to such finding in federal court.

This order shall also call out that plaintiff's counsel are wrong when they state: "The [remedial] Order is clear that the Court will evaluate the sufficiency of the evidence" (Opp. 23). The remedial order specifically limited the remedy to "further process."

7

identification of the fatal flaws in the evidence" (Opp. 1).  Counsel go on: "the *objective evidence* clearly demonstrates that Defendants did not conduct a good faith investigation, or consider the evidence or Castro's rebuttals in good faith" (Opp. 6 (emphasis added)).  Plaintiff's counsel's "objective evidence," however, solely consists of argument that Lieutenant Barneburg chose (and OCS credited) bad and insufficient evidence, and so the procedure must have been flawed (*see* Opp. 7–8).  Plaintiff's counsel proffer *no* evidence of bias or failure to comply with the procedures set forth in the remedial order designed to ensure a lack of bias, and this order finds that there was no such bias.

In this way, plaintiff's counsel challenge the State's compliance with the following remedial order requirements:

> *Remedial order requirement No. 6:*  The decision-maker must state in writing each and every finding and state why each item of evidence does or does not show gang association.  The decision-maker must fairly state plaintiff's response to each item and the decision-maker's evaluation of those responses.
>
> *Remedial order requirement No. 11:*  Any finding by the decision-maker that plaintiff is a prison gang "associate" must state the definition used of "associate" and specify with particularity the reasoning for finding him to meet the definition used.

In addition to arguing that the insufficiency of the evidence demonstrates that Lieutenant Barneburg did not fairly evaluate the evidence (which contention is refuted above), counsel also argue that, as to specific source items, Lieutenant Barneburg did not "fairly state . . . [his] evaluation of [plaintiff's] responses" to the evidence and "specify with particularity the reasoning" in support of his validation recommendation.

### 1. No Failure to Specify Reasoning

*First*, counsel argue: "Rather than explaining how the submitted source items exhibit 'periodic' or 'regular' 'involvement' with the prison gang, Lt. Barneburg states, in conclusory fashion, that 'SUBJECT has been involved periodically with members or associates of the EME prison gang'" (Opp. 12 (citing Form 128-B at 13); *see also* Opp. 13 ("To the extent Lt. Barneburg suggests that the source items can be considered in the aggregate, this is incorrect.") (again citing Form 128-B at 13)).  Again, the remedial order required Lieutenant Barneburg to "specify with particularity the reasoning" in support of his validation recommendation.  This order finds that

8

Lieutenant Barneburg complied with this requirement. Counsel quote and cite Lieutenant Barneburg's *concluding remarks* on page 13 of the Form 128-B, but these remarks follow a thorough report that reviews each source item with particularity as required by the remedial order.

### 2. No Failure to Evaluate Responses to Source Items

*Second*, plaintiff's counsel argue that, as to three source items, Lieutenant Barneburg did not "fairly state . . . [his] evaluation of [plaintiff's] responses" to the evidence as required by the remedial order. Counsel state as to the drawing of the shield of the eternal warrior (source item number one) and the drawings of the Aztec chief and ruins (source item number four), "Lt. Barneburg fails to even address, let alone rebut this evidence, as required by the Court's order" (Opp. 16 and 21). A review of the discussion of these source items in Lieutenant Barneburg's Form 128-B reveals that these statements by counsel are simply untrue. Each of the arguments of plaintiff and his counsel were evaluated by Lieutenant Barneburg.

Plaintiff's counsel also assert that Lieutenant Barneburg failed to respond to plaintiff's arguments about a birthday card (source item number three) (Opp. 19). Yet, immediately after counsel make this claim they *quote* Lieutenant Barneburg's response (Opp. 20). Moreover, a review of the discussion of this source item in the Form 128-B reveals that Lieutenant Barneburg did evaluate the arguments of plaintiff and his counsel and statements to the contrary by counsel are untrue. Again, counsel attempt to confuse substance and procedure. There is a difference between Lieutenant Barneburg not addressing plaintiff's responses (as required by the remedial order) and counsel's argument now that his reasons were unconvincing. The former requirement was satisfied; the latter is irrelevant to evaluating whether the remedial order was satisfied.

### 3. No Error for Failure to Disclose Addendum

*Third*, plaintiff's counsel raise the fact that a confidential memorandum addendum to one of the source items was investigated and prepared by Lieutenant Vanderhoofven at the request of Lieutenant Barneburg after the interview but before the recommendation was rendered by Lieutenant Barneburg. As reviewed above, at the interview plaintiff's counsel challenged the reliability of a confidential memorandum that identified Castro as being the intended recipient of a weapon at the direction of a Mexican Mafia gang member. The Form 128-B including

9

Lieutenant Barneburg's findings states that although Attorney Burns "argue[d] the source item as if the weapon had been delivered [to Castro]" (but challenged the source item in other ways), the confidential memorandum inferred but did not specify whether the weapon was actually delivered and received by Castro. In order to clarify this point, Lieutenant Vanderhoofven, the author of the original memo, conducted a telephonic interview of the original confidential informant. "The informant stated that . . . the [] weapon was delivered to [Castro] by the informant at the direction of the EME member." Vanderhoofven prepared an addendum to his earlier memo, but that addendum was not provided to plaintiff's counsel before Lieutenant Barneburg made his validation recommendation. The Form 128-B states that disclosure was not required because "[t]his document does not provide new information, but clarifies an issue contained in the [original] document."

Plaintiff's counsel now challenge the failure to disclose the addendum. They argue: "this 'new' information should have been included in a separate confidential memorandum and disclosed to Castro in advance of his validation hearing — so that he could have a meaningful opportunity to respond . . . Castro did not have such an opportunity, and accordingly, this rather improbable source item cannot be used to support his validation" (Opp. 22 (citing Title 15 but not a specific subsection of the regulations)).

This order disagrees. It was not a violation of the remedial order to have conducted this follow-up to verify an ambiguity in the original confidential memorandum. To review, the remedial order set forth that state and CDCR regulations were to be followed unless otherwise specified, and there was no other specification that related to the extent — as opposed to timing — of disclosure of materials related to source items. Contrary to plaintiff, state regulations discuss disclosure of the source items themselves prior to the interview with the inmate, but then describe the gang investigator's role as one of review and *verification* of each source item. CAL. ADMIN. CODE, tit. 15, § 3378(c)(2) ("Information . . . shall be reviewed and verified by a gang investigator . . ."). Moreover, as reviewed above, the verification undertaken by Lieutenant Barneburg was not in response to an argument by plaintiff or his counsel. Lieutenant Barneburg was simply attempting to clarify a fact that had been inferred but not explicitly stated in the

10

1  original memorandum. This order finds that because Lieutenant Barneburg was verifying the
2  contents of a source item pursuant to state regulations, it was not error in carrying out the
3  procedure in the remedial order for Lieutenant Barneburg to have failed to disclose the addendum
4  before making his validation recommendation.

### 4. Other Challenges Are Non-Responsive to Remedial Order's Requirements

Plaintiff's counsel make several additional challenges to termination that are in fact not responsive to the remedial order's requirements.

For example, plaintiff's counsel argue that the definition of "associate" used by Lieutenant Barneburg was "unconstitutionally vague" and as such the State did not comply with the remedial order. In his declaration, Lieutenant Barneburg stated that the definition of "associate" he used was "an inmate/parolee who is involved periodically or regularly with members or associates of a gang" (citing CAL. ADMIN. CODE, tit. 15, § 3378(c)). Again, all that the remedial order called for as to the definition of "associate" was for Lieutenant Barneburg to "state the definition used of 'associate.'"[6] This requirement was included in the remedial order because plaintiff's counsel had proffered that it was not clear which definition the prison officers involved in the past had been using. Counsel now reiterate their earlier arguments — invoking their evidence from before the remedial order. They ignore that their request for the adoption of a different definition of "associate" was rejected by the remedial order, which adopted state regulations as a default procedure and did not modify the definition therein. Instead, the remedial order solely required the decision-maker to state the definition used, and it is now clear which definition was used here. The remedial order did not open the door to a renewed argument that such definition is unconstitutionally vague.

Moreover, in this very case our court of appeals found that Castro "received sufficient notice to satisfy due process," when he was informed that he was being investigated on charges of being a gang "member," when in fact he was ultimately validated for being a gang "associate." *Castro v. Terhune*, 29 F. App'x 463, 464–65 (9th Cir. 2002). Thus, the term "associate" itself as

---

[6] The remedial order did *not* require Lieutenant Barneburg "to articulate his understanding of the CDCR's [] definition," as plaintiff's counsel now assert (Opp. 11).

11

defined in state regulations is not unconstitutionally vague. At the hearing on this motion, plaintiff's counsel presented language from *Poore v. Alameida*, No. C03-04115 MJJ, 2006 WL 2458719, *7 n.12 (N.D. Cal. Aug. 22, 2006), and argued that language therein would not be vague compared to the definition used by the state regulations. Counsel ignore that immediately after the cited language *Poore* held that the definition of "associate" was *not* unconstitutionally vague. So too here.

Plaintiff's counsel further argue that the evidence is too old to comply with the remedial order's admonition that this validation process was to evaluate whether Castro is a prison-gang associate *now* ("not in 1997 or 2009 (or any other time)"). Counsel argue that this statement means that the evidence used to determine whether plaintiff is a prison-gang associate must be "current" evidence (Opp. 13). This argument ignores the very next sentence in the remedial order, which states: "This does not mean that earlier evidence is inadmissible in the new validation process." Plaintiff's challenge on this basis is essentially a challenge to the fairness of the state regulations and what is required to determine whether the source items qualify as proper evidence to support a validation. Those state regulations, however, *were specifically adopted by the remedial order* — with no modification as to the date of source items — as the proper mechanism for conducting a new validation procedure. In fact, in briefing to determine the specifics of the remedial order, plaintiff's counsel did not even request that state regulations be augmented to limit source items to some recent period of time (*see* Dkt. Nos. 374 and 381). Plaintiff's claim on this basis therefore fails.

Lastly, plaintiff's counsel argue that because OCS did not consider the material counsel attempted to submit to OCS subsequent to Lieutenant Barneburg's recommendation, this must show that the State's validation procedure was biased and predetermined (Opp. 9–10). Not so. *First*, the remedial order did not provide for a separate hearing by or submission directly to OCS subsequent to the IGI's recommendation; instead, the remedial order adopted state regulations governing OCS review of the validation package — which regulations do not provide for such hearing by or submission to OCS. *Second*, the remedial order contained requirements concerning communications among individuals involved in the validation process that were designed to

12

safeguard against the insertion of bias into the process in some way. The fact that plaintiff's counsel were unsuccessful in their attempt to get more information to the OCS evaluators (before a validation decision was rendered) indicates only that it was not provided for in the remedial order procedures and that OCS was diligent in finalizing their decision. This order finds no indication of bias or predetermination in the fact that plaintiff's counsel failed to get unsolicited information to the OCS evaluators.

**CONCLUSION**

For the reasons stated, the relief provided to plaintiff to remedy the State's procedural due process violation should be and is hereby terminated pursuant to 18 U.S.C. 3626(b)(4). Further process was provided pursuant to state and CDCR regulations and the additional process provided in the remedial order, and Lieutenant Barneburg and OCS nevertheless found that plaintiff is a Mexican Mafia prison-gang associate. Even plaintiff's counsel's characterization of the procedure provided demonstrates that care was taken and great allowance was given to counsel and plaintiff himself to attempt to demonstrate that he was not a gang associate. The outcome of that process does not change the fact that such procedure was provided, according to the terms of the remedial order. Plaintiff has been provided his remedy for the procedural due process violation that occurred in 1997, and that is all the remedy plaintiff is due. Defendant's motion to terminate this case is accordingly **GRANTED**.

The Court thanks counsel for both sides for their excellent work and recognizes that counsel for Carlos Castro have dedicated their labor without the usual compensation. This has been exemplary. The Court encourages counsel to continue their excellent work on appeal.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 5, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13